94 So.2d 20

Mrs. Florence A. ROCHE

v.

METROPOLITAN LIFE INSURANCE COMPANY.

No. 40835.

Feb. 25, 1957.

Henry G. Neyrey, Jr., E. B. Charbonnet, Jr., New Orleans, for plaintiff-appellant.

Phelps, Dunbar, Marks, Claverie & Sims, J. Barnwell Phelps, New Orleans, for defendant-appellee.

FOURNET, Chief Justice.

The plaintiff, Mrs. Florence A. Roche, instituted suit to recover on a policy of insurance issued by the defendant, Metropolitan Life Insurance Company, on the life of her late husband, William T. Roche, in which she is named as beneficiary. The defendant in its answer admitted issuance of the policy but made the affirmative defense that in the application for the policy in suit the insured had made certain false and fraudulent answers for the purpose of deceiving the defendant as to the true condition of his health, and that the policy would not have been issued had the true facts been disclosed. The answer adds that the defendant has no interest in the sum of $321.36 paid to it as premiums on said policy, which amount had been tendered to plaintiff before suit was filed, but refused, and that it wished to deposit said sum in the Registry of the Court. The deposit was made, and following trial there was judgment, rendered in accordance with the verdict of a jury, rejecting plaintiff's demand. The plaintiff has appealed.

The record shows that on July 12, 1945, the defendant company issued its Policy No. 15,585,393A, agreeing, upon the death of the insured, to pay the sum of $3,000 to the named beneficiary, the plaintiff herein. The application for the policy is divided into Parts A, B and C. Part A, dated May 31, 1945, was, according to testimony in the record, completed by the agent from answers of the insured, and contains applicant's name and personal data as well as the statement: "It is understood and agreed that: 1. The foregoing statements and answers are correct and wholly true and, together with the answers to questions on Part B hereof, shall form the basis of the contract of insurance, if one be issued. * * *." Part B, dated June 28, 1945, is labeled "Continuation of the Application, Applicant's statements to the Medical Examiner." Part C, the Medical Examiner's Report, is headed by the printed notation that it is "No part of the Applicant's Declaration." It is in Part B that the insured answered "No" to four questions in which he was asked, respectively, if he had "ever

been an inmate of a hospital, sanatorium, asylum or cure whether for observation, examination or treatment?" if he had "ever had any ailment or disease of the heart or lungs," had "ever raised or spat blood," or "consulted a physician for any ailment or disease not included in your above answers;" and to a fifth question, "What clinics, hospitals, physicians, healers or other practitioners, if any, not named above, have you consulted or been treated by, within the past five years?" he answered "None"—whereas the uncontradicted record of the Charity Hospital at New Orleans shows that the insured visited the outpatient clinic of that institution, for the purpose of being treated for tuberculosis, several times each year beginning in 1938 and extending through 1945, having spent four days as a patient in the hospital in 1938 when his condition was diagnosed as pulmonary tuberculosis; and that X-Rays were taken of his lungs on various occasions in each of those years, the last having been made on March 15, 1945.[1]

Counsel for appellant argues that the insured considered his illness to be trivial and of no consequence,[2] and, relying on Cunningham v. Penn Mut. Life Ins. Co., 152 La. 1023, 95 So. 110, submits that his misstatements should not be held to void the policy. Counsel also points to the fact (established on the trial of the case) that the policy was written at the insistence of defendant's agent who, having sold Roche two policies some eight or nine years previously, sought to induce him to take a new one for $10,000—yet the insured applied for only the $3,000 policy contested here; and he argues that this negates any attempt to defraud the defendant.

The instant contract was confected prior to the adoption of Act 195 of 1948, the Insurance Code of Louisiana (now incorporated in the Revised Statutes as R.S. 22:1 et seq.), and the law applicable is set out in Act 52 of 1906, as amended by Act 227 of 1916.[3] A purpose of this and enactments of other states containing similar provisions was to abolish the highly tech-

---

1. The death of the insured occurred on October 6, 1946, though admittedly from a cause other than pulmonary tuberculosis.

2. This is said to be shown through the testimony of plaintiff's witnesses, which was uncontradicted and was to the effect that the insured was active in his business of conducting two barrooms in which he owned an interest, of running a handbook on horse racing and conducting poker games; he took no special rest, spent almost all his waking hours at his place of business, led a life that at times was dissipated; he also acted as precinct captain and held a job as sidewalk inspector for the City of New Orleans; never spoke of any illness, appeared well and healthy, and no precautions were taken to protect members of the family from contagion, though his grandchildren were often at his home.

3. "Be it enacted * * * That every policy of insurance issued or delivered within the State on or after the first day of January, nineteen hundred and seven, by any life insurance corporation doing business within the State shall contain the

nical doctrine of warranty, the intent of the Legislators being to transform a warranty into a representation, thus saving a policy of insurance from forfeiture for false statements contained therein unless they are found to be material or fraudulent. See Vance, Handbook of the Law of Insurance (3rd ed. 1951) 417, Sec. 74. In Goff v. Mutual Life Ins. Co. of New York, 131 La. 98, 59 So. 28, this Court commented on the difference between warranties and representations, observing that in the case of the latter, their falsity does not vitiate the policy unless material, and that a statement in an application for life insurance, to be material, must have been an inducement to the contract. See 45 C.J.S., Insurance, § 595d(3), p. 406; 29 Am.Juris. 422, Insurance, Sec. 524; annotation, 63 A.L.R. 846 et seq., in particular at 854, subdivision "n"; annotation 131 A.L.R. at 617 et seq.; Rhodes v. Metropolitan Life Ins. Co., 5 Cir., 172 F.2d 183.

The rule universally obtaining is clearly and succinctly stated in 45 C.J.S., op. cit.

supra, thus: "To avoid a policy on the ground of false representation, the representation ordinarily must relate to a matter material to the risk, the test of materiality being whether knowledge of the facts would have influenced the insurer in determining whether to accept the risk or in fixing the amount of premiums. In the absence of statute, a causal connection between the facts misrepresented and the death of the insured is not necessary to establish the right to forfeiture."

A case having many points of similarity to the one now being considered, and which we think is controlling here, is that of Lee v. New York Life Ins. Co., 144 La. 445, 80 So. 652. In that case, as here, the application for insurance was made on the solicitation and insistence of defendant's agent, who sought to induce the insured to take a policy for a much larger amount than that applied for; there, as here, the insured denied ever having had any ailment or illness of various named organs of the body, and gave an untrue answer about having

entire contract between the parties and nothing shall be incorporated therein by reference to any constitution, by-laws, rules, application or other writings unless the same are endorsed upon or attached to the policy when issued; and all statements purporting to be made by the insured shall in the absence of fraud be deemed representations and not warranties, *and no statement or statements not endorsed upon or attached to the policy when issued shall be used in defense of*

*a claim under the policy unless contained in a written application and unless a copy of such statement or statements be endorsed upon or attached to the policy when issued.* Any waiver of the provisions of this section shall be void." Act 52 of 1906, as amended by Act 227 of 1916. See Dart's Louisiana General Statutes, Vol. 3, Sec. 4113. (The portion shown in italics indicates that which was added by the 1916 amendment.)

ever consulted a physician;[4] the medical examination in both cases revealed no past or present disease, and in the Lee case, as here, the insured had the appearance of a healthy man, led an active life attending to his business—yet suffered from a chronic condition (Bright's disease) for which he had received treatment from physicians over a period of years and had been given certain tests which are usually identified with the disease. This Court, in affirming the lower court's judgment dismissing the suit of the beneficiary under the policy, held that if the insurance company had been advised of those tests, some of which occurred a short while before the application for insurance, "it would not have insured his life without knowing the result of those tests, and \* \* \* the information that was withheld was therefore material." 144 La. at page 454, 80 So. at page 655.

From the record it is clear that the insured, at the time he made this application, was not only aware of the fact that he was suffering from pulmonary tuberculosis, but is bound to have known of the seriousness of his condition because of the number of consultations, the various tests, and the eighteen X-Rays made of his chest and lungs during the period; and we are equally satisfied that the information withheld was

material and that the defendant would not have insured the life of Roche without further information relative to the showing made by the tests and examinations mentioned above.

The case relied on by plaintiff, Cunningham v. Penn Mutual Life Ins. Co., 152 La. 1023, 95 So. 110, is not apposite from a factual or a legal standpoint; that case applied the well settled rule of our jurisprudence that questions to an applicant for insurance concerning diseases or consultations are to be understood as referring to appreciable disorders, and not to inconsequential illnesses of a temporary character, though attended by a physician; so that although the answers may be knowingly untrue, the policy will not be thereby avoided unless the said representations are material to the risk.

Nor is there merit in the plaintiff's argument that "No evidence whatever was offered to show that the insured signed Part B of the application annexed to the policy, nor was it shown that any of the answers appearing therein were written into the application before the same was signed by whomever signed it," and therefore the plaintiff must prevail since, having made an affirmative defense based on the falsity

---

4. His answer was "Yes," with the explanation that the consultation related to malaria of which he had had a mild attack

one year before, lasting only three or four days.

of certain answers in Part B, the defendant carried the burden of proving every element to maintain the defense. That rule does not apply where, as here, the plaintiff's claim is founded on the genuineness of the very document as to which she now seeks to put defendant to strict proof. The plaintiff waived the need of such proof; so long as the signature is genuine for purposes of her recovery, it is also genuine with respect to a defense based on the falsity of its declarations. See Wigmore on Evidence (3rd ed. 1940), Vol. IV at 589, Sec. 1297; op. cit., Vol. VII at 575–576, Sec. 2132.

Our attention is called to the fact that the judgment makes no reference to the sum of $321.36, representing annual premiums on the policy, which amount was deposited in the Registry of Court below by the defendant. To that extent the judgment will have to be amended.

For the reasons assigned the judgment appealed from is amended by decreeing Mrs. Florence A. Roche to be the owner of the money deposited by the defendant in the Registry of Court, and accordingly the Clerk of the District Court is ordered to turn over to her the amount of $321.36, and as thus amended the judgment appealed from is affirmed; the plaintiff to pay all costs.