199 So.2d 617 (1967)
Agnes L. TRAHAN, Plaintiff-Appellant,
v.
SECURITY LIFE AND TRUST COMPANY, Defendant-Appellee.
No. 2014.
Court of Appeal of Louisiana, Third Circuit.
June 1, 1967.
*618 Rogers, McHale & St. Romain, Jack Rogers, Lake Charles, for plaintiff-appellant.
Brame, Stewart & Bergstedt, by John Stewart, Lake Charles, for defendant-appellee.
Jones, Kimball, Harper, Tete & Wetherill, by J. Norwell Harper, Lake Charles, for defendant-exceptor.
Before CULPEPPER, SAVOY and HOOD, JJ.
HOOD, Judge.
Plaintiff, Mrs. Agnes L. Trahan, instituted this suit to recover the proceeds of a policy of insurance issued by the defendant, Security Life and Trust Company, insuring the life of her late husband, Adam Trahan. One of the defenses specially pleaded by the defendant is that plaintiff is barred from recovery because the insured fraudulently made false representations of material facts in his application for that policy and in a confidential medical report submitted in connection with that application, which statements were given for the purpose of deceiving the defendant as to the true condition of his health. Judgment on the merits was rendered by the trial court in favor of the defendant, rejecting plaintiff's demands, and plaintiff has appealed.
The evidence shows that on October 28, 1963, Adam Trahan executed and submitted to Security Life and Trust Company, through its agent, an application for a life insurance policy in the amount of $9,400.00. The purpose of obtaining the policy was to insure the repayment, in the event of Trahan's death, of a mortgage loan which the latter previously had obtained from a savings and loan association in Lake Charles. The defendant contends that Trahan gave false answers to the following questions which were asked on that application: (1) In question No. 8, the applicant was asked to "Circle each condition or illness for which you have ever consulted a physician. (If none, so state.)" Following that question eight different illnesses or physical conditions were listed, one of which was "cancer or tumor." The applicant did not circle any of the conditions or illnesses and the word "None" was written in response to that inquiry. (2) In question No. 9, the applicant was requested to "Name below all other causes for which you have consulted a physician in the last seven years(If none, so state)." In response to that inquiry Mr. Trahan answered "None." (3) In question No. 10, the applicant was asked "Are you now in sound health so far as you know?" And, in reply to that inquiry Mr. Trahan answered "Yes."
After the application was submitted, Mr. Trahan was referred by the defendant to Dr. M. A. Pierson for a medical examination, which was made on December 5, 1963. The examination conducted at that time consisted of checking the height, weight and blood pressure of the applicant, making a urinal analysis for albumin, sugar and specific gravity, and obtaining from the applicant answers to a number of prescribed questions as to his physical condition and past medical history. As Trahan answered the questions which were propounded to him, Dr. Pierson wrote the answers given to him on a "confidential medical report," the form of such report having been furnished to the medical examiner by defendant. This report was then signed by Trahan, it was dated on the date the examination was made, and it was forwarded to defendant by Dr. Pierson. Among the questions asked and the answers given by Trahan, as shown on this written report, are the following: (1) Question No. 3 was "Have you consulted or been attended by a physician during the past five years?" To this question Mr. Trahan replied "Annual physical for company, no defects." (2) Question 4 was "Have you ever haddiabetes, disease of kidneys, bladder or prostate, kidney colic or stones?" Mr. Trahan answered "No." (3) In question No. 7 Mr. Trahan was asked "Have you had x-ray, electrocardiogram or other special studies in past five years?" And his reply to that question was *619 "No." (4) Finally, in question No. 8, the applicant was asked "Are you now in good health?" Mr. Trahan's reply to that question was "Yes."
On November 12, 1963, the defendant insurer wrote to Mr. Trahan advising him that some blood cells were found in his specimen of urine, and that it would be necessary for him to submit two more specimens for further examination. The specimens were submitted by Trahan, as requested, and they were received by defendant. A policy of insurance, insuring the life of Adam Trahan for $9,400.00, was then issued by the defendant company on December 5, 1963. The policy was given a special classification, however, calling for a premium one and one-fourth times the regular premium, the explanation given being that "Each of three of his specimens which were analyzed in our laboratory were found to contain a moderate number of blood cells."
Mr. Trahan, the insured, died on August 29, 1964, less than nine months after the policy was issued. The death certificate which was issued shows that the immediate cause of death was "Acute myocardial infarction." It also shows that another significant condition contributing to death, but not related to the terminal disease condition, was "Carcinoma prostate."
The evidence shows that Mr. Trahan had been suffering from cancer of the prostate since 1961, and that he was being treated for that condition at the time he submitted the application for life insurance to the defendant insurer and at the time he was examined by the defendant's medical examiner. Dr. Robert O. Emmett, in examining Trahan during the latter part of the year 1961, found a mass in his prostate gland, and he thereupon referred him to Dr. Charles O. Frederick, a urologist. Dr. Frederick examined Mr. Trahan on December 1, 1961, and x-ray studies were made of Trahan's spine and pelvic areas at that time and in connection with that examination. As a result of that initial examination Dr. Frederick diagnosed Trahan's condition as "cancer of the prostate." The x-rays which were taken at that time showed multiple areas of metastatic cancer in the patient's spine and pelvis, and because of that condition Dr. Frederick concluded that Trahan's condition was "inoperative," that is it was not curable by surgery, and that the disease which he had was "fatal." He proceeded to treat Mr. Trahan for that condition, and he continued to treat him principally by the administration of hormones, from that time until Trahan's death on August 29, 1964.
The record shows that Trahan was treated by Dr. Frederick for this condition on an average of about once every two months from December 1, 1961, until shortly before his death in 1964. He received 13 treatments from Dr. Frederick for this condition between the time the doctor began treating him and the time Trahan signed the above described application for insurance on October 28, 1963. Trahan, in fact, was treated by Dr. Frederick for this malignancy on October 22, 1963, which was only six days before the application for insurance was completed and signed by him and about two weeks before he was examined by Dr. Pierson.
Within a few days after Trahan was initially examined by Dr. Frederick, on December 1, 1961, the doctor informed plaintiff, Mrs. Trahan, of the fact that her husband had cancer of the prostate. Neither she nor Dr. Frederick told Mr. Trahan that he had such a disease, however, and the evidence does not show that the decedent ever knew that he had a malignancy. Trahan was very much concerned over his physical condition, however, and he called the doctor several times between visits to inquire about it. Dr. Frederick testified that Trahan became so concerned about his condition that he prescribed tranquilizers for him shortly before his death. Although it is not shown that Trahan was aware of the fact that he had a malignancy, the evidence shows that when he completed and signed the application for insurance he knew that he was being treated at that *620 time by Dr. Frederick for a disease of his prostate gland, that he had been under Dr. Frederick's treatment for that condition for almost two years, and that x-ray studies had been made of him within the past two years. We agree with the trial judge, therefore, that Trahan knowingly made false representations to defendant when he stated in the application for insurance and in the confidential medical report which he submitted that he had not been attended by a physician in the past five or seven years, that he had never had disease of the prostate, that no x-ray studies had been made of him within the past five years, and that he was in good health.
The trial judge concluded that some of the statements made by the decedent in the application for insurance and in the confidential medical report "were false and materially affected the acceptance of the risk or the hazard assumed by the insurer." He thus rejected plaintiff's demand and dismissed the suit.
LSA-R.S. 22:619(B) provides:
"In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer. * * *"
The settled jurisprudence of this state is that an insurer cannot avoid liability on a life insurance policy on the ground that false statements were made in the application unless the insurer establishes: (1) That the false statements were made with actual intent to deceive; and (2) that the facts misstated were material. Gay v. United Benefit Life Insurance Company, 233 La. 226, 96 So.2d 497 (1957); Fruge v. Woodmen of World Life Insurance Society, 170 So.2d 539 (La.App. 3rd Cir. 1965). See also Comment, 22 La.L.Rev. 190-201 (1961); 26 La.L.Rev. 566 (1966).
Where the insurer, who asserts a special defense that a life insurance policy issued by it is void because of false statements made by the insured in his application for such policy, establishes that the insured made false statements in the application with actual intent to deceive, and that the facts misstated are material, it is entitled to have the policy decreed to be forfeited even though the evidence shows that there is no causal connection between the facts misrepresented and the death of the insured. Roche v. Metropolitan Life Insurance Co., 232 La. 168, 94 So.2d 20 (1957); Flint v. Prudential Ins. Co. of America, 70 So.2d 161 (La.App. 1st Cir. 1954); Radosta v. Prudential Insurance Company of America, 163 So.2d 177 (La.App. 4th Cir. 1964); Lamark v. Lincoln Income Life Insurance Company, 169 So.2d 203 (La.App. 4th Cir. 1964).
And where such a special defense is asserted by the insurer on a life insurance policy, the burden of proof rests on the insurer to establish both the materiality of the false statements and the intent to deceive. Gay v. United Benefit Life Insurance Company, supra; Fruge v. Woodmen of World Life Insurance Society, supra. See also Welch v. New York Underwriters Insurance Company, 145 So.2d 376 (La.App. 3d Cir. 1962).
As we have already pointed out, the evidence shows that Mr. Trahan gave false answers to three questions contained in the above mentioned application for insurance, and to four questions propounded to him by the medical examiner for defendant. Since Trahan had not been informed that he had a malignancy, we cannot say that he knowingly gave a false answer to question No. 8 in the application, inquiring as to whether he had consulted a physician for "cancer or tumor." We are convinced, *621 however, that the statements or representations which he made in response to all of the other questions hereinabove noted were false, that he knew that they were not true, and that he gave the false answers for the purpose of deceiving the defendant and inducing it to issue the life insurance policy for which he was applying.
As we have already noted, the settled jurisprudence of this state is that false representations in an application for life insurance will not constitute a ground for forfeiture of the contract unless they relate to matters material to the risk, that is, unless the misstatements materially affected either the acceptance of the risk or the hazard assumed by the insurer. The test of materiality is whether knowledge of the facts would have influenced the insurer in determining whether to assume the risk or in fixing premiums. Lamark v. Lincoln Income Life Insurance Company, supra; Radosta v. Prudential Insurance Company of America, supra.
The evidence in the instant suit shows that if Trahan had stated in the application or to Dr. Pierson, in response to specific questions propounded to him seeking that information, that he had been treated for a disease of the prostate during the last two years, that he was then under treatment for such a condition by Dr. Frederick, that x-ray studies had been made of him within the past two years, or that he was not in sound health, the defendant insurer would have made further inquiries and would have required a report as to the condition of his health from Dr. Frederick, the treating physician, before a policy would have been issued. And, if a report would have been obtained from Dr. Frederick, it would have shown that Trahan had "cancer of the prostate" and that his condition was "fatal." We are satisfied, as was the trial judge, that defendant would not have issued a policy insuring the life of the applicant if it had had such a report from Dr. Frederick. Our conclusion is that the facts misrepresented by Trahan materially affected the acceptance of the risk and the hazard assumed by the insurer.
Plaintiff argues, however, that the policy should not be voided, because at the time the policy was issued the defendant insurer had knowledge of the fact, or had reason to suspect, that Trahan had a malignancy. Plaintiff correctly points out that before the policy was issued the defendant received three urine specimens from the applicant, each of which contained blood cells, and she contends that this information was sufficient to indicate to the defendant that the applicant was suffering from cancer at that time.
Dr. Frederick testified that the presence of blood cells in the urine could be caused by a number of different conditions, the principal cause being an infection, the second being the presence of a kidney stone, and the third the presence of a tumor or cancer. He stated that the finding of blood cells in the urine should have put the defendant's medical expert on notice that there was a "possibility" of cancer, but that infection was the most common cause of that condition. The tests made by defendant showed only "a moderate number of blood cells" in the urine, and all of the other reports, and the medical history which had been received by the defendant insurer at that time, showed no history of cancer or any other circumstance or treatment which would indicate that the applicant had a malignancy. Under those circumstances, we agree with the trial judge that "the finding of a moderate number of blood cells in the urine specimen, and the slight raise of premium as a result thereof, did not nullify the defendant's right to rely upon the statements made by Mr. Trahan in his application and in the medical report."
Our conclusion is that Mr. Trahan knowingly and willfully made false statements to the defendant insurer in his application for insurance and in connection with the examination made by the defendant's medical examiner, that those statements were made for the purpose of deceiving defendant, *622 and that the facts misrepresented materially affected the acceptance of the risk and the hazard assumed by the insurer. Under those circumstances, defendant is entitled to have the policy of insurance which it issued to the decedent voided.
For the reasons herein set out the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.