205 So.2d 485 (1967)
Carol Sue Fincher KNIGHT, Individually, and as Administrator and Natural Tutrix of her minor children, Richard Bryant Knight and Tyrone Timothy Knight, Plaintiff-Appellee,
v.
JEFFERSON STANDARD LIFE INSURANCE COMPANY, Defendant-Appellant.
No. 7188.
Court of Appeal of Louisiana, First Circuit.
December 19, 1967.
*486 Don M. Arata, of Richardson & Arata, Bogalusa, for appellant.
Donald H. Lee, of Seal, Lee & Crain, Bogalusa, for appellee.
Before LOTTINGER, SARTAIN and ELLIS, JJ.
SARTAIN, Judge.
Plaintiff, Mrs. Carol Sue Fincher Knight, instituted this suit to recover the proceeds of a policy of insurance issued by the defendant, Jefferson Standard Life Insurance Company, insuring the life of her late husband, Richard Dale Knight. The defendant insurer specially defended on the ground that certain untrue statements, material to the risk, were knowingly made by the insured in his policy application, and had the true and complete facts been disclosed in the application, defendant would not have issued the policy. Judgment on the merits was rendered by the trial court in favor of the plaintiff, rejecting the above defense, and defendant has appealed.
A stipulated chronological order of occurrences reveals that on November 25, 1964, plaintiff was first seen by Dr. Foster, his family physician, for a sore throat. On February 8, 1965, plaintiff had chills and fever and consulted Dr. Foster who immediately confined plaintiff in Bogalusa Community Medical Center where he remained for three days (Feb. 8, 9, 10) and was treated for cervical adenitis, which Dr. Foster described as "lymph glands that swell up secondary to an infection depending upon where the infection is. We get cervical adenitis from a sore throat." The application for insurance with Jefferson Standard was dated May 4, 1965. On June 28, 1965, plaintiff was seen by Dr. Foster and referred to Dr. Hartman because the lymph nodes had become enlarged. Two nodes were removed and forwarded to New Orleans for biopsy on June 28, 1965. As a result of the biopsy, Hodgkins Disease was diagnosed on June 30, 1965. Mr. Knight died on June 12, 1966, well within the contestable period of two years.
*487 Defendant-insurer contends that Knight, by failing to state that he had been hospitalized on February 8, 1965, and by answering "No" to certain questions, made a fraudulent misrepresentation of material fact which induced the defendant insurance company to grant the policy.
The record in this case clearly establishes the facts upon which the legal issues presented are to be resolved. The policy in controversy was secured by Mr. Clayton L. Baggett, agent for the insurer. Mr. Baggett had on one previous occasion talked to Mr. Knight concerning the latter's purchase of the contested policy. Several days before May 4, 1965, the date of the application for the policy, Mr. Baggett returned to the Knight home. He was accompanied by his district manager, Mr. William R. Matheny. Mr. Matheny asked the questions as indicated on the application form and filled out the same. Among the questions asked and Knight's responses thereto as they appear on this application are the following:

Question 8, Item F.: "Have you ever been a patient in a hospital, sanitarium or institution?"

Answer: "Yes." Knight explained that the hospitalization was due to a hernia in 1947.

Question 12: "Are you aware of any physical defect or have you had any complaint not mentioned above?"
Answer: "No."

Question 13: "Have you consulted a doctor for any cause not included in the above answer?"
Answer: "No."
The only writing of Mr. Knight on the form is that of his signature. It is undisputed that the question of Mr. Knight's previous hospital stay of February 8-10, 1965 was not mentioned or discussed. Mr. Matheny did agree that Mr. Knight stated that "sometime in the past he had occasion to see the doctor about some acid" that got into his eyes, but this was not reflected in the application because Mr. Matheny considered it unimportant and a "minor" occurrence.
Mr. Baggett was a close personal friend of Mr. Knight for some five years. He stated that on the occasion of May 4, 1965, he considered Mr. Knight to be in good health and observed nothing that would indicate any conclusion to the contrary. Mr. Knight was 26 years of age at the time of the application. The record is clear and supports no other conclusion but that at the time Mr. Knight applied for and obtained the insurance policy in question he was unaware of the possibility that he was in fact suffering from Hodgkins Disease. He saw Dr. Foster on November 25, 1964 for what he thought to be a sore throat. He returned to Dr. Foster on February 8, 1965 for a sore throat. On this occasion he also evidenced chills and fever and it is clear that he was hospitalized for this reason.
Dr. Foster testified that he treated Mr. Knight with antibiotics and discharged him on February 10, 1965 when his chills and fever had subsided. The doctor was very definite in that Mr. Knight was admitted to the hospital for sore throat and that he was treated accordingly.
Mrs. Knight testified that her husband considered that he had only a sore throat in November of 1964 and February of 1965 and that this was his opinion at the time application was made for insurance.
The evidence further shows that Mr. Knight's sore throat had persisted for a considerable period of time. In November of 1964, Dr. Foster observed enlarged lymph nodes on the right side of Mr. Knight's neck. He attached no particular significance to this condition because such is usually secondary to sore throat and the swelling may not subside for several months. The enlarged lymph nodes were also present on February 8, 1965. Again, Dr. Foster attached no particular significance to this *488 condition for the same reason. It was not until June 28, 1965 when Mr. Knight returned to Dr. Foster because his throat was not better and the swollen lymph glands was still present that Dr. Foster referred him to another physician. A biopsy was performed on one of the lymph nodes and the diagnosis of Hodgkins Disease was made. Mr. Knight died on June 12, 1966 as a result of this disease.
Dr. Van W. Gunther, Vice President and Medical Director of the defendant, testified that the presence of swollen lymph nodes in November, 1964 and February of 1965 was a clear indication that Mr. Knight was a poor insurance risk and that had the matter been called to his attention the subject policy would not have been issued without a further medical examination. It was his testimony that Mr. Knight's failure to mention his hospitalization in February of 1965 was a nondisclosure of a material fact which denied defendant the opportunity to order further medical examination and refuse to issue the policy in the event of a diagnosis of Hodgkins Disease.
It is also clear that on the date of application for the policy although it was unknown to Mr. Knight and his family physician, Mr. Knight was in fact afflicted with a fatal disease.
The trial judge stated in his written reasons, "The court must make a determination as to the knowledge of the patient at the time he applied for the policy and not based on other evidence that came to light subsequent to that day". The judge a quo held that he placed more emphasis upon and gave greater weight to the testimony of Dr. Foster than that of the testimony of Dr. Gunther. Accordingly, he determined that no fraudulent misrepresentations were made by Mr. Knight and that the plaintiffs were entitled to recover under the policy.
For reasons hereinafter stated we are of the opinion that the trial judge is correct in both his findings of fact and conclusions of law.
Resolution of the case at bar necessitates a thorough consideration of LSA-R.S. 22:619.
"Warranties and misrepresentations in negotiation; applications
A. Except as provided in Sub-section B of this Section and R.S. 22:692, no oral or written misrepresentation or warranty made in the negotiation or an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or avoid the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive.

B. In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer. Amended and reenacted Acts 1958, No. 125." (Emphasis added)
The intent or meaning of the above statute is considered in the case of Gay v. United Benefit Life Ins. Co., 233 La. 226, 96 So.2d 497. In considering R.S. 22:619 (B) the court stated the following:
"Undoubtedly the declaration relied on is inartistically drawn and, when read with the remaining part of the section, it tends to create ambiguity. Hence, it requires interpretation.

* * * * * *
The declaration relied on herein by appellant [22:619(B)] does not clearly evidence *489 an intention to change the law as it existed prior to the drafting of the Louisiana Insurance Code. This is particularly true when we consider that the signification of the original statutory provision had been determined by judicial interpretation many years prior to the codification and the Legislature never saw fit during that lengthy period, by means of an ordinary statute, to alter that determination. And after a careful reading of the cases in which the pre-existing law was interpreted and applied we are convinced that the codifiers, with reference to the provisions in question (LRS 22:619B), were merely attempting to express the courts' holding to the effect that in order to vitiate a policy a misstatement must have been made fraudulently or with the intent to deceive, that is (or), knowing it to be untrue and believing it to be material to the risk (or of such nature that it would be only reasonable to assume that he must have believed that it was material). Incidentally, we especially note that the general language of the added declaration (on which appellant relies) definitely appears to be an attempt to follow the language of the opinion in Carroll v. Mutual Life Insurance Company of New York, supra [168 La. 953, 123 So. 638,] the last clear expression of this court prior to the codification with respect to the instant matter." (Emphasis added)
Thus, it can be seen that the Gay decision interpreted the above statute and construed the disjunctive word "or" in R.S. 22:619(B) to mean "and", therefore making it necessary that the insured not only make a material misrepresentation but that he must also make it with an intent to deceive.
The Gay case was considered in conjunction with R.S. 22:619(B) in 25 Louisiana Law Review 386. Professor J. Denson Smith stated:
"Section 619B of the Insurance Code31 seems to afford the insurer a defense when a false and material representation is made in the application for a policy of life insurance. Nevertheless, present jurisprudence of the Supreme Court may be counted as requiring the presence of an intent to deceive on the part of the applicant, a position not free from question.32 During the last term, however, the Supreme Court refused certiorari in a case wherein it was held that deceit does not have to be shown by the company to sustain a defense on the basis of false answers of a material nature.33 On the other hand, another court rejected, on the ground of good faith, an insured's defense based on false and material answers resulting in non-disclosure of a heart attack suffered nine or ten months before the application.34 Some further delineation of the proper application of R.S. 22:619B would appear to be in order. (Emphasis added)
31 La.R.S. 22:619B (1950).
32 Gay v. United Benefit Life Ins. Co., 233 La. 226, 96 So.2d 497 (1957). But see Roche v. Metropolitan Life Ins. Co., 232 La. 168, 94 So.2d 20 (1957). which, however, dealt with an earlier statute. These cases are examined in The Work of the Louisiana Supreme Court for the 1956-1957 TermInsurance, 18 La.L.Rev. 73 (1957).
33 Radosta v. Prudential Ins. Co. of America, 163 So.2d 177 (La.App. 4th Cir. 1964).
34 LaFleur v. All Am. Ins. Co., 157 So. 2d 254 (La.App. 3d Cir. 1963)."
There remains today a divergence of opinion as whether or not an intent to deceive is a prerequisite to invalidation of a life insurance policy under R.S. 22:619(B).
The Gay decision was adhered to in LaFleur v. All American Life Insurance Company, 157 So.2d 254 (mentioned in Professor Smith's article); Fruge v. Woodmen of the World Life Insurance Society, La. App., 170 So.2d 539; Trahan v. Surety Life and Trust Company, La.App., 199 So. 2d 617.
*490 In the Fruge case (supra), the court found no intent to deceive, which it considered necessary in view of the Gay decision:
"We think it is settled, therefore, that in view of the provisions of LSA-R.S. 22:619 an insurer cannot succeed in avoiding liability on a life insurance policy on the ground that false statements were made in the application, unless the insurer establishes: (1) That the false statements were made with actual intent to deceive; and (2) that the facts allegedly misstated were material. The law also is clear that where the insurer asserts a special defense of this sort the burden of proof rests on the insurer to establish both the materiality and an actual intent to deceive. See Gay v. United Benefit Life Insurance Company, supra; Kennison v. U. S. Letter Carriers' Mutual Benefit Association, supra [La.App., 132 So.2d 94;] Welch v. New York Underwriters Insurance Company, La.App. 3 Cir., 145 So.2d 376; and LaFleur v. All American Insurance Company, La.App. 3 Cir., 157 So.2d 254 (cert. denied); XXII L.L.R. 190-201."
On the other hand, Radosta v. Prudential Ins. Co. of America, La.App., 163 So.2d 177 (mentioned in Professor Smith's article) and other cases emanating from the Fourth Circuit, Lane v. Life Insurance Company of Virginia, La.App., 176 So.2d 202; Lamark v. Lincoln Income Life Ins. Co., La. App., 169 So.2d 203, have not mentioned or followed the Gay case.
The court in the Radosta case (supra) stated:
"In order to invalidate a life insurance policy on the ground that the insured had made false answers to questions propounded by the examining physician in connection with the application for the policy, it is not necessary for the insurer to prove fraud on the insured's part. LSA-R.S. 22:619(B). It is now well settled by the jurisprudence of this state that false representations in an application for life insurance will furnish ground for forfeiture of the policy if they relate to matters material to the risk, the test of materiality being whether knowledge of the facts would have influenced the insurer in determining whether to accept the risk or in fixing the amount of premiums. Roche v. Metropolitan Life Insurance Company, 232 La. 168, 94 So.2d 20; Lee v. New York Life Ins. Co. of New York, 144 La. 445, 80 So. 652; Karno v. Metropolitan Life Insurance Company, [D.C.,] 137 F.Supp. 893; [5 Cir.,] 242 F.2d 141; Rhodes v. Metropolitan Life Ins. Co. 5 Cir., 172 F.2d 183; Kennison v. U. S. Letter Carriers' Mutual Benefit Association, La.App., 132 So.2d 94; Flint v. Prudential Ins. Co. of America, La.App., 70 So.2d 161."
The above language was quoted in the Lane decision (supra) and in the Lamark case (supra) the court held:
"In Louisiana settled jurisprudence is to the effect that false representations in an application made for life insurance constitute ground for forfeiture of the contract if they relate to matters material to the risk; the test of materiality is whether knowledge of the facts would have influenced the insurer in determining whether to assume the risk or in fixing premiums. Roche v. Metropolitan Life Insurance Company, 232 La. 168, 94 So.2d 20; Lee v. New York Life Ins. Co. of New York, 144 La. 445, 80 So. 652; Kennison v. U. S. Letter Carriers' Mutual Ben. Ass'n., La.App., 132 So.2d 94; Flint v. Prudential Ins. Co. of America, La.App., 70 So.2d 161; Karno v. Metropolitan Life Insurance Company, D.C., 137 F.Supp. 893; 5 Cir., 242 F.2d 141; Rhodes v. Metropolitan Life Ins. Co., 5 Cir., 172 F.2d 183."
The single dominating factor in the Radosta, Lane and Lamark cases is the manifest bad faith on the part of the insured.
*491 In Radosta, the court found that
"From hospital records and uncontradicted testimony of physicians who attended decedent, it abundantly appears that Radosta's answers to the medical interrogatories were false and untrue. He made no disclosure of the fact that he had been hospitalized at Touro Infirmary in New Orleans from September 23, 1958, to October 4, 1958, for treatment of a bleeding duodenal ulcer. The hospital report reveals also that a physician was called in for consultation because Radosta also suffered from chronic prostatitis, a urethral stricture and multiple diverticula of the bladder. He was subjected to various tests and surgical procedures. The results of the gastro-intestinal series indicated the patient had a hiatal hernia, an irregularity in the outline of the preplyoric portion of the stomach, a post-bulbar ulcer, and diverticula in the descending duodenum. One of the attending physicians stated Radosta should have been re-examined after appropriate therapy to exclude the possibility of a pacreatic lesion. X-ray examinations of his chest while in the hospital indicated that the decedent had diffuse dilatation and tortuosity of the aorta, a condition suggestive of cardiovascular disease."
In Lane, the insured was also at one time a life insurance agent, a point which the court deemed significant:
"* * * Telling the agent that he had been in Touro Infirmary for only "a check-up" when in fact he had been confined there for treatment was itself a deception, and his failure to disclose any information about his confinement to Touro Infirmary would have been inexcusable even in a layman, and Lane, as a life insurance agent himself, is presumed to have known the reliance placed by life insurance companies on the reports of their medical examiners."
The reasons for Lane's hospitalization are pertinent:
"* * * The record shows that Lane had entered Touro Infirmary for treatment just six weeks before his application for insurance. He entered Touro on February 19, 1960 and remained under treatment there until February 25, 1960. Among his complaints were shortness of breath for the past six months and coughing which was more severe at nights. The patient underwent a bronchoscopic examination under a local anesthetic. An electrocardiogram was made and when discharged he was put on digitalis and other drugs. The final diagnosis was `chronic brochitis; pulemphysema; ASHD; Mild C. H. F.'"
The insured, in the Lamark case, answered "no", to the following questions in the application:
"`10. Has proposed insured, wife or any child ever:
a. Consulted or been treated by any physician or practitioner in past 5 years? Give name, address, details. * * *?'"
and question 29 of part II reads:
"29. Have you consulted a physician or received hospital or sanitarium observation or care during the past five years?"
In considering the above questions and responses, the court stated:
"There is not the remotest doubt that the answers given the agent when he propounded questions 10(a) and 29 were far from the truth because it is shown abundantly by the record that the decedent was then in very poor health and to say the least a bad insurance risk.
The applicants did not disclose the fact that the decedent had been treated at Charity Hospital in New Orleans on numerous occasions between March, 1957 and July 29, 1961, the latter being the date the application was made. Decedent had a history of grand mal type of epilepsy *492 of 14 years duration, and also for prostatic disorders and complaints of blood in the urine."
In contrast to the Radosta, Lane and Lamark cases, the insured in the instant case was clearly in good faith.
Without attempting to oversimplify the matter, it appears to us the issue herein presented is an "and" or "or" problem. Stated another way, does the interpretation of R.S. 22:619(B) require (1) intent to defraud or materiality, thus giving the insurer two grounds upon which a policy of life insurance may be rescinded; or (2) fraudulent intent "and" materiality, thus giving an insurer one ground upon which to cancel a life insurance policy? The Gay case in our opinion, clearly resolves the question and stands for the proposition that in order to invalidate a life insurance policy due to false representations in the application such representations must have been made with an intent to deceive and the facts misstated must be material to the risk and hazard involved.
Considering the above authorities, it is clear that the Gay, LaFleur, Fruge and Trahan cases, supra, are within the "and" category. The Radosta, Lane, and Lamark cases and Kennison v. U. S. Letter Carriers' Mutual Benefit Association, La.App., 132 So.2d 94 fall into the "or" category. The Kennison case, supra, has also been cited with approval in the Fruge case, supra. Inasmuch as the Kennison case was decided by this court we feel compelled to reconsider the decision reached therein particularly in view of the above authorities and the result reached in the instant matter. The Kennison case involved a suit on a health and accident policy. In the opinion is found the following language:
"* * * Under the clear holding of Gay v. United Benefit Life Insurance Company, 233 La. 226, 96 So.2d 497, it is necessary that not only must the answers given on the application be false, but the applicant must know them to be false. We are further of the opinion that our law is clear that when the insurer asserts a special defense of this sort, the insurer has the burden of proving wrongful intent or materiality. Telford v. New York Life Ins. Co., 227 La. 855, 80 So.2d 711; Bankson v. Mutual Benefit Health & Accident Association, 208 La. 1008, 24 So.2d 59. The question of intent is not presented since counsel has conceded that no question of fraud is involved, and the record is devoid of any testimony as to the materiality of the alleged false statements. The defendant has the burden of establishing this defense and having failed to present evidence on this point, has not met the burden of proof." (Emphasis added)
It is clear that in considering the Kennison case we erred in implying that an insurer could nevertheless void an insurance contract in the absence of fraud but where there was a serious issue as to the materiality of certain alleged false statements. We simply stated in the Kennison case that the record "is devoid of any testimony as to the materiality of the alleged false statements." and that defendant had failed to bear its burden of proof in this regard. It is now clear to us that the Gay case requires an intent to defraud and in the absence of proof of such intent a consideration of materiality becomes unnecessary.
The question of whether or not further delineation of the proper application of R.S. 22:619(B) is in order as suggested by Professor Smith is a matter that addresses itself to our Supreme Court.
For the above and foregoing reasons the judgment of the district court is affirmed at appellant's costs.
Affirmed.