450 So.2d 406 (1984)
Zella GREEN, Plaintiff-Appellant,
v.
PILOT LIFE INSURANCE COMPANY, Defendant-Appellee.
No. 83-670.
Court of Appeal of Louisiana, Third Circuit.
May 16, 1984.
*407 Glorioso & Fleming, Robert F. Fleming, Jr., New Orleans, Joseph E. Windmeyer, Metairie, for plaintiff-appellant.
Brame, Bergstedt & Brame, Joe A. Brame, Lake Charles, for defendant-appellee.
Before DOMENGEAUX, GUIDRY and DOUCET, JJ.
GUIDRY, Judge.
This is a suit by Zella Green against Pilot Life Insurance Company (hereafter Pilot Life) to recover benefits allegedly due her as an insured under a disability income policy issued by defendant. Plaintiff additionally seeks penalties and attorney's fees pursuant to LSA-R.S. 22:657. Plaintiff alleges that she became totally disabled as the result of an accident which occurred on April 7, 1978. Following the accident, Pilot Life paid to plaintiff monthly benefits in the amount of $500.00 for a period of nine months. Thereafter, upon notice to plaintiff, Pilot Life terminated benefits and rescinded plaintiff's policy on the ground that plaintiff, in her application for insurance, made certain intentional misrepresentations which materially affected the risk assumed by the insurer. See LSA-R.S. 22:619(B). Plaintiff thereafter filed this suit. After trial on the merits, the court rendered judgment in favor of defendant, dismissing plaintiff's demands at her cost. Plaintiff appeals.
On October 6, 1977, Mrs. Green was called upon at her home by Mr. Phillip Pittman and Mr. Gerald Ceyen for the purpose of selling a disability income policy of insurance to her. Mr. Pittman was a division manager for Jefferson Standard Life Insurance Company, and Mr. Geyen was an agent for the same company. They sold disability insurance through Pilot Life and it is undisputed that they acted as agents for Pilot Life. Pittman testified that he asked Mrs. Green the questions on the application and recorded her answers in his handwriting, however he admitted that he did not ask her weight but guessed at it being 160 pounds. Mrs. Green testified that she signed the application without reading it. Thereafter, the information was transferred and typed on a different application form and returned to Mr. Geyen for Mrs. Green's signature. She also testified that she signed this document without reading it.
Defendant alleges that the application contains the following intentional material misrepresentations:
1. Plaintiff's weight was noted on the application at 160 lbs.
2. The question regarding whether plaintiff had ever been declined similar insurance by another company was answered in the negative.
3. The question regarding whether plaintiff, if disabled, would receive income from salary, wages, sick leave plan, investments, individual or group health insurance, any governmental plan, or any other source, was answered in the negative.
4. The question which asks for the complete details of treatment, including the name and address of the practitioner, for certain listed conditions, diseases or disorders, and of any consultations or examinations by a physician within the past five years was answered by noting only "routine pap smearannuallyall negativeDr. M. Miller, L.C.".
The following facts, as found by the trial judge in his written reasons for judgment, which are clearly supported by the record, evidence the falsity and inaccuracy of the above-stated responses on the application signed by Zella Green:
"At the time the application was made for the policy at issue here, Mrs. Green had a disability policy with Washington National Life Insurance Company and Mutual of Omaha. Also, approximately seven (7) months prior to her application with Pilot Life, she applied for disability coverage with State Farm. This coverage *408 was declined because of her past medical history.
The evidence also shows that on July 11, 1975 she was seen by Dr. Lee J. Monlezun for menorrhigia and he treated her from July 7, 1975 until June 25, 1976 for obesity. During that period of time, her weight averaged 236 pounds with a high of 255 pounds and a low of 216.25 pounds.
Plaintiff was treated by Dr. Max Miller during two separate periods for obesity. The first such period was for five months in 1970 and the second period began in November, 1976 and ended in March, 1977. During this period her weight fluctuated from 266½ pounds to 243 pounds and averaged 253.
From this evidence it becomes convincingly clear to the court that Zella Green had an overweight problem of long standing and this problem was of concern to her because she sought treatment on three different occasions.
Reviewing the insurance applications the court notes that the State Farm application of March 14, 1977 shows a weight of 170 pounds, the Mutual of Omaha application on April 4, 1977 shows a weight of 170 pounds, and the Pilot Life application of December 20, 1977 shows a weight of 160 pounds. Unless Mrs. Green was a medical phenomena, such weights were impossible."
The application thus (1) misrepresents plaintiff's weight; (2) fails to note that plaintiff was denied disability coverage with State Farm only seven months prior to this application; (3) fails to note that, if disabled, plaintiff would receive benefits from two other insurance policies; and, (4) fails to note treatment by Dr. Monlezun for menorrhagia and obesity and treatment by Dr. Miller for obesity.
In order to successfully urge LSA-R.S. 22:619(B)[1] as a defense to recovery of the proceeds of an insurance policy by the insured, the insurer has the burden of proving, in addition to the falsity of the statements made, materiality and intent to deceive. Gay v. United Benefit Life Insurance Co., 233 La. 226, 96 So.2d 497 (1957); Cloud v. Security General Life Ins. Co., 352 So.2d 406 (La.App. 3rd Cir.1977).
The remaining issue is thus whether the trial judge was clearly wrong in concluding that defendant sustained its burden of proving by a preponderance of the evidence that plaintiff had the requisite intent to deceive and that the misrepresentations were material.
In Watson v. Life Ins. Co. of La., 335 So.2d 518 (La.App. 1st Cir.1976), the court set out the following standard of proof for determining whether the statements are made with the requisite intent to deceive:
"Strict proof of fraud is not required to show the applicant's intent to deceive, because of the inherent difficulties of proving one's intent. The intent to deceive must be determined from the attending circumstances which indicate the insured's knowledge of the falsity of the representations made in the application and his recognition of the materiality thereof, or from circumstances which create a reasonable assumption that the insured recognized the materiality of the misrepresentations."
This standard was adopted by the Supreme Court in Johnson v. Occidental Life Insurance Company of California, 368 So.2d 1032, at 1036 (La.1979).
The test of materiality is whether knowledge of the facts would have influenced the insurer in determining whether to assume the risk or in fixing premiums. Trahan v. Security Life and Trust Company, 199 So.2d 617 (La.App. 3rd Cir.1967).
*409 After a careful review of the record, we find no manifest error in the trial judge's conclusion that a preponderance of the evidence establishes that plaintiff made material misrepresentations with the intent to deceive.
Plaintiff relies on a line of jurisprudence which holds that the acts of an insurance agent in filling out an application form falsely are the acts of his principal, the insurer, and they do not bind the innocent insured nor bar recovery by him or his beneficiaries. Ryan v. Security Industrial Insurance Co., 386 So.2d 939 (La.App. 3rd Cir.1980); Cloud v. Security General Life Ins. Co., supra; Fruge v. Woodmen of the World Life Insurance Society, 170 So.2d 539 (La.App. 3rd Cir.1965); Morein v. American Physicians Insurance Company, 192 So.2d 887 (La.App. 3rd Cir.1966), writ refused, 250 La. 268, 195 So.2d 147 (1967). To support her reliance on this legal principle, plaintiff points to the fact that her weight was misstated by Mr. Geyen, without a misrepresentation by plaintiff. Additionally, plaintiff asserts that in response to the question on other sources of disability payments, she handed Mr. Geyen a shoe box full of policies. This testimony was corroborated by Mr. Geyen. Plaintiff finally urges that her testimony to the effect that she failed to read either the written or typed application before signing, stands unrefuted.
In Fruge v. Woodmen of the World Life Insurance Society, supra, at 543 and 544, we stated the rule as follows:
"The rule also prevails in this state that when the agent of an insurer, acting within the scope of his authority, proceeds to fill out the blanks in an application for a policy of insurance, the acts, representations and mistakes of that agent are considered to be those of the insurance company. In such a case if the agent by mistake, fraud or negligence inserts erroneous or untrue answers to the questions contained in the application, these representations bind the insurer but are not binding upon the insured, provided that the insured was justifiably ignorant of the erroneous answers, had no actual or implied knowledge thereof, was guilty of no bad faith or fraud, and had no intent to deceive the insurer." (citations omitted, emphasis supplied)
In all of the above cited cases there was a failure to show an intent to deceive on the part of the insured.
In the instant case, as noted by the trial judge, the plaintiff was a well educated public school teacher who had prior experience applying for insurance. She had also sold insurance (annuities) for public investors for a period of two years (1974-75). Although plaintiff testified that she did not read either the written or typed application before signing, plaintiff's credibility was seriously put at issue by her own testimony. The record is replete with instances where in testimony both at trial and on deposition, plaintiff contradicts herself. At least twice she contended that the answers in question on the application, including the statement of her weight, were accurate and not misstatements, a fact clearly refuted by the record. Plaintiff does not contend that she advised Mr. Geyen of the recent rejection of coverage with State Farm or of her treatment for obesity by Drs. Miller and Monlezun. Instead, at different times in deposition and at trial, she gave completely different and contradictory explanations for these misstatements on the application. First, she denied applying with State Farm or treatment for obesity; secondly, she denied being asked the questions; and, thirdly, she contended that she merely answered to the best of her ability. In this respect, we agree with the trial judge that the following quotation from the case of Davis v. State Farm Mutual Automobile Insurance Company, 415 So.2d 501 (La.App. 1st Cir.1982) is analogous:
"It is inconceivable to this court that someone who already has insurance, in applying for insurance with another company, can misunderstand the simple question (relating to prior accidents and traffic violations). To argue, contend or find that someone can misunderstand such questions begs the real question, *410 that is, was the applicant telling the truth?"
The above stated attending circumstances indicate the insured's knowledge of the falsity of at least two, if not all, of the representations made in the application. Furthermore, as found by the trial judge, plaintiff's recent prior experience with State Farm where she had properly noted her treatment for obesity in the application and consequently was denied coverage, indicates that plaintiff recognized the materiality of the misrepresentations.
The record also supports the trial judge's conclusion that, had plaintiff been truthful and made a full disclosure of her medical history, the policy would not have been issued.
For the above and foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] LSA-R.S. 22:619(B) provides:

"B. In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer."