HAMITER, Justice.
 

 As beneficiary, Mrs. Jessie Gay seeks to recover herein the proceeds (some $8,000) • of an insurance policy issued by the United Benefit Life Insurance Company upon the ljfp .of Wilma Earl Gay, her husband. The special defense urged is that untrue material-statements made by the insured in the application for the insurance rendered the contract null and void.
 

 ■ The policy was issued on December 1, 1953 without a medical examination. In the application Gay, when answering certain propounded questions, denied that he had ever been afflicted with any heart or circulatory disease. He died July 31, 1954. An autopsy disclosed that he had experienced a very serious congenital heart defect which, it is conceded, would have materially affected the risk.
 

 The district court rendered judgment in favor of plaintiff. ' Also, it maintained the intervention of an assignee under the policy. The defendant is appealing.
 

 Appellant, in assigning error to the judgment, submits the following propositions: “(1) The statute which is controlling (Louisiana Statutes Annotated R.S. 22:-619), is authority for the principle of law that a false statement which materially affects either the acceptance of the risk or the hazard assumed by the insurer will bar recovery :under the insurance contract, even though the' applicant did not know of its falsity; ' (2) Alternatively, under the same statute, the insured made these false statements with actual intent to deceive, concealing his knowledge of facts which these questions were meant to elicit.”
 

 Early in our jurisprudence, in cases involving insurance contracts, this court recognized a distinction between statements made as warranties and those given as mere representations. The statements held to be warranties, and on which the validity of the policies depended, were required to be literally true and correct regardless of materiality or other considerations. However, in 1906, by Act 52, the Legislature declared that
 
 ■“
 
 * * * all statements pur
 
 *229
 
 porting to be made by the insured shall in the absence of fraud be deemed representations and not warranties. * * * ” This language was repeated in Act 227 of 1916 when the 1906 statute was amended and reenacted.
 

 After the 1906 act, as well as subsequent to the 1916 statute, this court interpreted such language to mean that incorrect statements in an application would not vitiate the policy unless they were wilfully made with an intent to deceive and were material to the risk. Cole v. Mutual Life Insurance Company of New York, 129 La. 704, 56 So. 645; Goff v. Mutual Life Insurance Company of New York, 131 La. 98, 59 So. 28; Valesi v. Mutual Life Insurance Company of New York, 151 La. 405, 91 So. 818; Cunningham v. Penn Mutual Life Insurance Company of Philadelphia, Pa., 152 La. 1023, 95 So. 110; and Carroll v. Mutual Life Insurance Company of New York, 168 La. 953, 123 So. 638.
 

 In 1948 the above quoted provision of the 1906 and 1916 statutes was substantially carried
 
 into the
 
 then adopted Louisiana Insurance Code (Act 195) as a part of Section 14.09, Paragraph 2 thereof (now LRS 22:619B), it reading: “In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. * * * ” And to it there was added: “ * * * The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.” On this added declaration appellant relies in contending for his legal proposition that a material false statement will bar recovery under the insurance contract even though the applicant did not know of its incorrectness.
 

 Undoubtedly the declaration relied on is inartistically drawn and, when read with the remaining part of the section, it tends to create ambiguity. Hence, it requires interpretation.
 

 Now, in interpreting the provisions of codifications it must be borne in mind that primarily the general purpose of the lawmakers in enacting such legislation is to clarify and codify the laws as they then existed and as construed by the courts— not to change them. In this connection the following is stated in Crawford on Statutory Construction (1940), Section 324: “A code is simply a part of the statutory law and has no higher standing or sanctity than an ordinary statute. Like many other legislative enactments, a code or revision should be subjected to a liberal construction, in order to promote the objects for which it was enacted — to clarify existing statutes * * *.
 

 
 *231
 
 “Accordingly, where there is ambiguity in the revised statutes, it should be construed as expressing the law as it was prior to the revision, unless the court finds a clear intention to alter the old law.
 

 “Furthermore, the judicial construction ■of a statute later incorporated in a codification or revision may be referred to for assistance, since the court’s interpretation of the law under such circumstances, by adoption, becomes a part of the code or revision.
 

 “Even a change in the language or phraseology of a statute included in a codification or revision will not, as a general rule, alter the law, unless the change be so material or radical as to indicate an intention on the part of the legislature to modify the law, or unless the intention to change clearly appears from the language of the revised statute, and especially when considered in connection with the subject matter and the legislative history.
 

 « ‡ ^ ^
 

 “In fact the court will presume that the legal effect of a consolidation and restatement is the same as that of the old statutes. Consequently, the revisors are presumed not to have changed the law, if the language which they have used fairly admits of a construction making it consistent with the old law. * * * ”
 

 The declaration relied on herein by appellant does not clearly evidence an intention to change the law as it existed prior to the drafting of the Louisiana Insurance Code. This is particularly true when we consider that the signification of the original statutory provision had been determined by judicial interpretation many years prior to the codification and the Legislature never saw fit during that lengthy period, by means of an ordinary statute, to alter that determination. And after a careful reading of the cases in which the preexisting law was interpreted and applied we are convinced that the codifiers, with reference to the provisions in question (LRS 22.-619B), were merely attempting to express the courts’ holding to the effect that in order to vitiate a policy a misstatement must have been made fraudulently or with the intent to deceive, — that is (or), knowing it to be untrue and believing it to be material to the risk (or of such nature that it would be only reasonable to assume that he must have believed that it was material). Incidentally, we especially note that the general language of the added declaration (on which appellant relies) definitely appears to be an attempt to follow the language of the opinion in Carroll v. Mutual Life Insurance Company of New York, supra, the last clear expression of this court prior to the codification with respect to the instant matter.
 

 Appellant’s second, or alternative proposition, presents the question of fact: did the insured know of the existing physi
 
 *233
 
 ■cal defect and suppress the information for the purpose of deceiving the insurer ? The -trial judge correctly resolved that question in the following well considered written reasons: “The insured was what is commonly known as a ‘blue baby’, that is, he was born with a malformed heart, a condition which caused his death * * *.
 

 “Here the decedent was informed as a small child that he had been a ‘blue baby’. But there is no evidence that he had any understanding of the meaning of the term .and the court feels that, contrary to the testimony of one of the expert witnesses, ■such understanding is rare among most laymen. In addition, the evidence is to the effect that the decedent reasonably could have doubted and disbelieved what he had been told about being a ‘blue baby’ and that the ordinary person, in all probability, entertained such doubt and disbelief. For the ‘blue baby’ almost invariably dies within the first year or at most within the first five years, is unable to lead a normal life, has a distinct and easily noticeable bluish ■color, and is subject to quick and extreme fatigue. But this decedent lived to reach the age of thirty-seven years, was normal .and apparently healthy even to the extent ■that he was under no doctor’s care and, as far as the evidence shows, had had no need of consulting a doctor for a period of years, ■did not have a noticeable bluish color (which is established by the testimony of the defendant’s agent who sought out the decedent for the purpose of writing the insurance and did not notice such color), and was obviously not subject to quick fatigue as shown by his regular occupation of truck driver in which he engaged in long hours of work driving large trucks between New Orleans and California.
 

 “Opposed to these considerations is the history given by the insured in the Los Angeles Hospital where he suffered a severe attack. But the court is not particularly impressed by this history as it affects the previous knowledge and beliefs of the decedent. For it is apparent that the doctors in Los Angeles knew the cause of his illness, questioned him accordingly and, I believe, put down and emphasized that information which they received from him which would more definitely tie down the diagnosis. The condition of his fingers, emphasized by the expert testimony at the trial, apparently was not to such a marked degree as to cause the decedent or the ordinary layman to be suspicious thereof even though they would arouse such suspicion in the medically trained mind.
 

 “Considering all of the evidence the court is of the opinion that the answers which the defendant complains of were not true and correct answers but that the same were not ‘false’ (within the meaning of the statute) because the decedent did not know that they were untrue.”
 

 What was said by the district judge about the history given by the insured in
 
 *235
 
 the Los Angeles Hospital is appropriate to a somewhat similar history given in the Charity Hospital of Louisiana at New Orleans, in which institutions he did not become a patient until subsequent to the issuance of the policy.
 

 Supporting the above announced findings, we might further observe, is the proven fact that for several years prior to the issuance of the contract in question the insured carried a health policy under which he made no claims whatever.
 

 For the reasons assigned the judgment appealed from is affirmed.