170 So.2d 539 (1965)
Weldon Thomas FRUGÉ, Plaintiff and Appellee,
v.
WOODMEN OF the WORLD LIFE INSURANCE SOCIETY, Defendant and Appellant.
No. 1322.
Court of Appeal of Louisiana, Third Circuit.
January 5, 1965.
Rehearing Denied January 27, 1965.
*540 Leon S. Haas, Jr., Opelousas, for defendant-appellant.
J. Nilas Young, Eunice, for plaintiff-appellee.
Before FRUGÉ, SAVOY and HOOD, JJ.
HOOD, Judge.
Weldon Thomas Fruge instituted this suit against Woodmen of the World Life Insurance Society to recover benefits alleged to be due plaintiff under a life insurance contract issued by defendant. Under this contract defendant insured the life of plaintiff's minor son, Ronald Anthony Frugé, now deceased, and plaintiff is named as the beneficiary. Defendant denies coverage and liability on the ground that in answer to questions contained in the application for this insurance coverage plaintiff made material misrepresentations relating to the health of his minor son, who was the insured.
After trial on the merits, judgment was rendered by the trial court in favor of *541 plaintiff for the sum of $1,000.00, being the full amount of benefits provided in the policy, subject to a credit of $43.23, the last mentioned sum having been deposited by defendant in the registry of the court representing a refund of the premiums which had been paid on the policy plus the court costs which had accrued up to the time the deposit was made. Defendant has appealed.
The sole issue presented is whether plaintiff misrepresented facts relating to the health of his minor son in the application submitted to defendant for this insurance coverage, and, if he did, whether the misstatements were of such a nature as to vitiate the certificate of insurance.
The record shows that plaintiff's son was born on October 14, 1949, with a congenital heart defect known as a leaking heart, and that he continued to have this heart condition up to the time of his death. Within a few weeks after the child was born, however, the defendant issued a life insurance contract or certificate insuring the boy's life, and plaintiff kept that certificate in effect by the regular payment of premiums until the insured was seven or eight years of age, at which time plaintiff voluntarily surrendered the policy for its cash surrender value. The evidence does not show whether the defendant knew of the insured's heart condition at the time the first policy was issued or while it was in effect.
Sometime during the month of October, 1962, which was several years after the first insurance certificate had been surrendered, plaintiff discussed with Norbert L. Miller, sales representative for the defendant insurer, the question of whether defendant would issue another life insurance certificate covering the life of plaintiff's son, who was then thirteen years of age. Plaintiff and Miller differ somewhat in their recollection of what was said about the boy's health at that time. They agree, however, that in that discussion Miller expressed the opinion that the defendant would issue a certificate insuring the life of the boy, especially since the company had previously insured him, and Miller at that time informed plaintiff that he would check into the matter and would let plaintiff know.
On November 6, 1962, Miller called on plaintiff at the latter's home and informed him that the defendant company was willing to issue a certificate of insurance on the life of plaintiff's son. Miller then produced a form of application for a life insurance certificate, and he proceeded to ask plaintiff the questions which were on this form, and Miller wrote the answers on this form as they were given to him by plaintiff. After Miller had completed the form of application he handed it to plaintiff for his signature, and plaintiff proceeded to sign the completed application without reading it.
Pursuant to that application a certificate was issued by the defendant Society on December 1, 1962, insuring the life of plaintiff's minor son, and plaintiff was named as the beneficiary under that insurance contract. The insured died of a heart disease on July 8, 1963, which was less than eight months after the policy was issued.
Among the questions which appeared on the application which plaintiff submitted to defendant for this insurance coverage were the following:
"4. Has the child ever had asthma, pleurisy, pneumonia, tuberculosis (consumption), habitual cough, disease of the heart, meningitis, fits or convulsions, rheumatism, disease of the liver or kidneys, scarlet fever, diphtheria, infantile paralysis, or any other dissease, operation or injury of any kind? If so, state disease or injury, explain fully, giving date of complete recovery and name and address of attending physicians.
"5. Has the child any physical or mental weakness or deformity? If so, explain.

*542 "7. Is the child now in good health to the best of your knowledge and belief?"
Miller wrote "No" in response to questions 4 and 5, and he wrote "Yes" in response to question 7. Defendant contends that these answers were false, and that they constituted willful misstatements which materially affected either the acceptance of the risk or the hazard assumed by the insurer, and that the false answers or misstatements had the effect of vitiating the contract of insurance.
Plaintiff testified that he became aware of his son's heart condition a few weeks after the birth of the child, and that he knew that his son still had that condition in November, 1962, when he submitted to defendant a formal application for the aforementioned insurance coverage. He further stated, however, that while discussing this matter with Miller a few weeks before the formal application was completed, he informed Miller, "that the boy still had the heart condition, and that whenever he exerted too much or exercised too much, * * * that his body would turn blue, and that he could not participate in any sports, rugged sports * * *". He further testified that while the application was being filled out on November 6, 1962, Miller asked him the questions which are quoted above, and that plaintiff then again informed Miller fully of his son's existing heart condition. He stated that when Miller finished writing answers to the questions contained in the form, he handed the completed application to plaintiff, and that plaintiff signed the application without reading it over. Plaintiff testified that he did not know what answers had been written in response to the abovementioned questions until after defendant had refused payment of the benefits allegedly due under the contract following his son's death.
Defendant's agent, Miller, acknowledges that while discussing the matter with plaintiff in October, 1962, plaintiff told him that his son "was born with a leaking heart," but he does not recall plaintiff telling him that the heart condition still existed. He states that it was his understanding that the boy had not had any more trouble with his heart and that he was then in good health, although he admits that he does not remember plaintiff making any statement to that effect. Miller further testified that in asking plaintiff questions 4, 5 and 7 appearing on the application he purposely omitted asking him anything about the boy's heart condition, because he explained, "I thought the Woodmen of the World had a record of that particular statement before." Miller concedes that the boy's heart condition was mentioned while the application was being completed, but he says he stated to plaintiff at that time that "The Woodmen of The World evidently has a record of that already, so that's nothing to worry about." He does not recall whether plaintiff read the application before signing it, but he states that plaintiff could have read it if he had asked to do so.
We think the evidence establishes that plaintiff fully and correctly informed defendant's agent, Miller, of the existing heart condition of the insured before the application was submitted, and that he informed Miller again of that condition while the application was being completed. Miller, although being fully aware of the boy's condition, nevertheless wrote answers to questions in the application which indicated that the boy did not have and had never had a heart disease. The answers to questions 4, 5 and 7 in the application are false insofar as they relate to the boy's heart condition, and in our opinion the nature of the insured's heart ailment was such that it materially affected the hazard assumed by the insurer.
Plaintiff, however, carefully gave true and correct answers relating to the health of the insured at the time Miller filled out the application form, and he previously had informed defendant's agent fully of the boy's heart condition. Miller, nevertheless, *543 being fully aware of this condition, inserted false answers in the application. Plaintiff then signed the application without reading it, and he was unaware of the fact that false answers had been given in it. We think the evidence establishes clearly that plaintiff answered the questions propounded to him by defendant's agent truthfully and correctly, that plaintiff was in good faith, that he is not chargeable with fraud, and that he clearly had no intent to deceive defendant or its agent.
LSA-R.S. 22:619 provides:
"A. Except as provided in Subsection B of this Section and R.S. 22:692, no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or avoid the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive.
"B. In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer."
In Gay v. United Benefit Life Insurance Company, 233 La. 226, 96 So.2d 497, our Supreme Court said:
"[A]fter a careful reading of the cases in which the preexisting law was interpreted and applied we are convinced that the codifiers, with reference to the provisions in question (LRS 22:619B), were merely attempting to express the courts' holding to the effect that in order to vitiate a policy a misstatement must have been made fraudulently or with intent to deceive,that is (or), knowing it to be untrue and believing it to be material to the risk (or of such nature that it would be only reasonable to assume that he must have believed that it was material)."
In Kennison v. U. S. Letter Carriers' Mutual Benefit Association, La.App. 1 Cir., 132 So.2d 94, our brothers of the First Circuit held:
"Under the clear holding of Gay v. United Benefit Life Insurance Company, 233 La. 226, 96 So.2d 497, it is necessary that not only must the answers given on the application be false, but the applicant must know them to be false. We are further of the opinion that our law is clear that when the insurer asserts a special defense of this sort, the insurer has the burden of proving wrongful intent or materiality."
We think it is settled, therefore, that in view of the provisions of LSA-R.S. 22:619 an insurer cannot succeed in avoiding liability on a life insurance policy on the ground that false statements were made in the application, unless the insurer establishes: (1) That the false statements were made with actual intent to deceive; and (2) that the facts allegedly misstated were material. The law also is clear that where the insurer asserts a special defense of this sort the burden of proof rests on the insurer to establish both the materiality and an actual intent to deceive. See Gay v. United Benefit Life Insurance Company, supra; Kennison v. U. S. Letter Carriers' Mutual Benefit Association, supra; Welch v. New York Underwriters Insurance Company, La.App. 3 Cir., 145 So. 2d 376; and LaFleur v. All American Insurance Company, La.App. 3 Cir., 157 So. 2d 254 (cert. denied); XXII L.L.R. 190-201.
The rule also prevails in this state that when the agent of an insurer, acting *544 within the scope of his authority, proceeds to fill out the blanks in an application for a policy of insurance, the acts, representations and mistakes of that agent are considered to be those of the insurance company. In such a case if the agent by mistake, fraud or negligence inserts erroneous or untrue answers to the questions contained in the application, these representations bind the insurer but are not binding upon the insured, provided that the insured was justifiably ignorant of the erroneous answers, had no actual or implied knowledge thereof, was guilty of no bad faith or fraud, and had no intent to deceive the insurer. Harris v. Guaranty Income Life Ins. Co., 226 La. 152, 75 So.2d 227; Telford v. New York Life Ins. Co., 227 La. 855, 80 So.2d 711; Olivier v. Penn. Life Ins. Co., 146 So.2d 246 (La.App. 3 Cir.); Gleason v. Bankers Life and Casualty Co., La.App. 2 Cir., 147 So.2d 86.
These rules are applicable when the agent of the insurer deals with the beneficiary in regard to the insurance, as well as when the agent deals with the insured himself. Harris v. Guaranty Income Life Insurance Company, supra.
In the instant suit the plaintiff was justifiably ignorant of the fact that incorrect answers had been written by defendant's agent to some of the questions contained in the application. Plaintiff had no actual or implied knowledge of the fact that these incorrect answers had been given. He was guilty of no bad faith or fraud, and clearly he had no intent to deceive the defendant. Under those circumstances we think the trial court correctly held that defendant is not entitled to avoid liability on the ground that plaintiff had misrepresented facts which materially affected the risk.
Defendant contends, however, that it is immaterial whether plaintiff was in good faith, and that it is entitled to be relieved of liability on the sole ground that the false representations in the application were material to the risk. In support of that argument it relies on Flint v. Prudential Ins. Co. of America, La.App. 1 Cir., 70 So.2d 161; Karno v. Metropolitan Life Ins. Co., D.C., 137 F.Supp. 893 (affirmed 5 Cir., at 242 F. 2d 141); and Radosta v. Prudential Life Ins. Co. of America, 163 So.2d 177, La. App. 4 Cir.
The Flint and Karno cases were decided prior to the time the decision was rendered by our Supreme Court in Gay v. United Benefit Life Insurance Company, supra. If those cases are in conflict with the decision rendered in Gay v. United Benefit Life Insurance Company, then we feel that we must apply the rule stated in the last mentioned case. The Radosta case, supra, is inapplicable because there the court found that false statements relating to matters material to the risk were made by the insured at the time the application was submitted, and that such statements were made with actual intent to deceive the insurer.
Defendant also contends that plaintiff is presumed to know the contents of the application because he signed it and thereafter he held the certificate (to which a copy of the application had been attached) in his possession for several months immediately before the death of the insured. It takes the position that since plaintiff made no "objection" to the contents of the application during that period of several months he must be held to have adopted the answers in that application as his own. We find no merit to that argument. Under the circumstances presented here, where defendant's agent filled out the application and assured plaintiff that the insurer "evidently has a record of that already," we think plaintiff would have been justified in not calling the incorrect answers to defendant's attention after the issuance of the policy, even if plaintiff had read the application and had then become aware of the answers. See National Life & Accident Ins. Co. v. Vaughan, La.App. 1 Cir., 32 So.2d 490.
*545 For the reasons herein assigned, therefore, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellant.