Clare W. LENTZ, Plaintiff-Appellant,

v.

METROPOLITAN LIFE INSURANCE COMPANY, Defendant-Appellee.

No. 28764
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

June 29, 1970.

Rehearing Denied Aug. 11, 1970.

---

Frans J. Labranche, Jr., New Orleans, La., for appellant.

Peter G. Burke, New Orleans, La., for appellee.

Before THORNBERRY, CLARK and INGRAHAM, Circuit Judges.

THORNBERRY, Circuit Judge:

■ This is a suit by the wife of a deceased insured to recover the proceeds of a life insurance policy. The life insurance company defended by showing that the insured had made false statements in procuring the policy. After making careful findings of fact and conclusions of law, the district court rendered judgment for the insurance company. We affirm.[1]

Sometime in early 1964 an agent of the Metropolitan Life Insurance Company solicited Mr. Henry Lentz for a life insurance policy. Mr. Lentz purchased a ten-year term policy in the amount of $14,500. The insurance company's medical examiner, Dr. Charles J. Wheeler, examined the insured and completed the medical portions of the application, partly from Mr. Lentz' answers to his questions and partly from examination. One of the questions asked, "Have you ever had, or been told that you had, or been treated for, or sought advice concerning:" and listed a number of diseases, including "diabetes, sugar or albumin or blood in urine?" The answer reflected on the form is "No." Another question asks, "Have you had health examinations or check-ups in the past 5 years * * * other than in the course of your employment?" The answer on the application is "Yes," and the explanation given is "Dr. Bullard, Jeff. Hwy., periodically for common cold." Dr. Wheeler testified that he accurately reflected Mr. Lentz' answers on the application, which then became part of the contract of insurance. At the end of this portion of the application Mr. Lentz' signature appears, following this statement: "I have read the foregoing answers before signing. They have been correctly written as given by me, and are true and complete. There are no excep-

tions to any such answers except as stated herein."

The district court found as a fact that Mr. Lentz' answers to these questions were false, that Mr. Lentz knew they were false, and that he must have known that they were material to the risk undertaken by the insurance company. Specifically, the court found that Mr. Lentz had, about three years before making this application for insurance, consulted Dr. S. D. Bullard with complaints of shortness of breath, headaches and swollen ankles (ankle edema). Dr. Bullard found Mr. Lentz' blood pressure to be elevated ($^{174}/_{120}$–110), diagnosed his condition as hypertensive cardiovascular disease, advised Mr. Lentz accordingly, and prescribed medication. After this initial examination in 1961, Dr. Bullard examined Mr. Lentz once again in 1961, fifteen times in 1962, four times in 1963, and once in 1964, a few months before the insurance application. During these examinations, Mr. Lentz complained of a number of symptoms.

In 1962, Dr. Bullard had an urinalysis run of Mr. Lentz, with positive results, indicating a possible condition of diabetes. Therefore, Dr. Bullard had a fasting blood sugar test performed, and it produced a test result of 254 as compared with a normal upper limit of 120. The expert medical testimony before the district court indicates that it was unlikely that this result could have been caused by any medication Mr. Lentz was then taking. Dr. Bullard concluded that Mr. Lentz had diabetes mellitus, advised Mr. Lentz of this diagnosis, and prescribed medication and special diet. Dr. Bullard examined Mr. Lentz on approximately ten subsequent occasions. During this time, he varied the medication, discussed the condition thoroughly with Mr. Lentz, and had urinalyses and fasting blood sugar tests performed. The district court found that Mr. Lentz was an alert businessman who was fully aware of his medical conditions, both hypertension and diabetes.

---

1. Pursuant to our Local Rule 18 we decide this case on the briefs and record.

On this appeal, Mrs. Lentz, the appellant, attacks the judgment of the district court as to both findings of fact and conclusions of law. This Court, of course, cannot set aside the findings of fact of a district court unless they are clearly erroneous. Rule 52(a), Fed.R. Civ.P.; Gibbs v. Tomlinson, 5th Cir. 1966, 362 F.2d 394, 397. As the *Gibbs* case indicates, a finding of fact is clearly erroneous if it is without substantial evidence to support it, or the district court misapprehended the effect of the evidence, or the reviewing court is left with the "definite and firm conviction" that a mistake has been committed after inspecting the record as a whole. Under this standard, the district court's findings that Mr. Lentz' representations that he had never been told that he had diabetes or been treated for it were false, that Mr. Lentz knew they were false and made them deceitfully, and that he knew they were material to the risk are not clearly erroneous. These findings are supported by weighty and substantial evidence, the district court's findings demonstrate that it could not possibly have misapprehended the effect of the evidence, and certainly the evidence is convincing enough to this Court to prevent our saying that any mistake has been committed, much less doing so definitely and firmly.

The district court's essential conclusion of law was that the making of a material false representation by an insured with intent to deceive is a defense to a policy of life insurance. This conclusion is correct. It is quite clear that Louisiana law does not hold an insurer to strict proof of fraud in this situation. The applicable statute, La. Stat.Ann.—Rev.Stat. § 22:619 (1959), reads as follows:

A. Except as provided in Sub-section B of this Section and R.S. 22:692, no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or avoid the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive.

B. In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.

The Supreme Court of Louisiana interpreted this statute in Gay v. United Benefit Life Ins. Co., 1957, 233 La. 226, 96 So.2d 497, in which it stated, "[I]n order to vitiate a policy a misstatement must have been made fraudulently or with the intent to deceive,—that is (or), knowing it to be untrue and believing it to be material to the risk (or of such nature that it would be only reasonable to assume that he must have believed that it was material)." Thus the law as interpreted by the Louisiana Supreme Court allows the defense if material misstatements were made either fraudulently or with intent to deceive. Intent to deceive may involve either knowledge of materiality to the risk or circumstances in which an insured must have known of materiality to the risk. Several lower courts in Louisiana have also had occasion to consider the statute. Most have followed the *Gay* decision. *See, e. g.,* Knight v. Jefferson Standard Life Ins. Co., La.App. 1st Cir. 1967, 205 So.2d 485; Trahan v. Security Life & Trust Co., La. App. 3d Cir. 1967, 199 So.2d 617; La.-Fleur v. All American Ins. Co., La.App. 3d Cir. 1963, 157 So.2d 254. There are cases that do not follow the *Gay* case and do not require an actual intent to deceive, but instead focus on the element of misrepresentation. *E. g.* Lamark v. Lincoln Income Life Ins. Co., La.App. 4th Cir. 1964, 169 So.2d 203; Lane v. Life Ins. Co. of Virginia, La.App. 4th Cir. 1965, 176 So.2d 202; Radosta v. Prudential

**40**

Ins. Co. of America, La.App. 4th Cir. 1964, 163 So.2d 177. The conflict between the Circuits, however, may be more imagined than real, for all of the latter cases contain some element of bad faith on the part of the insured, manifested as knowledge of falsity or intent to deceive. We read the Louisiana jurisprudence, with particular emphasis on the *Gay* case, as requiring both a material misrepresentation and some element of intent to deceive on the part of the insured before an insurer may plead § 22:619(B) as a defense to a policy of insurance.

Both these elements were present in this case, according to the careful findings of the district court. The court, while recognizing the conflict in the Louisiana courts, held that "the denials * * * by Mr. Lentz were of such nature that it is only reasonable to assume that he must have believed such information to be material to the risk even under the more stringent test of the *Gay* decision." Mr. Lentz' knowledge of the falsity of his representations, the court further stated, is "unquestionable." The judgment contains neither erroneous law nor erroneous findings of fact.

Affirmed.