281 So.2d 871 (1973)
George STOMA, Plaintiff-Appellee,
v.
The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant-Appellant.
No. 4255.
Court of Appeal of Louisiana, Third Circuit.
August 20, 1973.
Rehearing Denied September 14, 1973.
Hall, Raggio & Farrar, by R. W. Farrar, Jr., Lake Charles, for defendant-appellant.
Raleigh Newman, Lake Charles, for plaintiff-appellee.
Before HOOD, CULPEPPER and MILLER, JJ.
MILLER, Judge.
Defendant The Prudential Insurance Company of America appeals the judgment awarding plaintiff George Stoma the benefits provided for under an extended medical health and accident insurance policy. Prudential contends that Stoma intentionally deceived the company by erroneously answering questions concerning his medical history and that these answers were material to Prudential's acceptance of the risk. We affirm.
In holding for plaintiff, the trial judge determined that there was a misrepresentation as to a material fact, but that defendant had failed to prove that plaintiff made such a misrepresentation with an actual intent to deceive. The primary question for determination here is whether or not the trial judge's factual determination in finding that defendant has not proven an actual intent to deceive, was manifestly erroneous.
The $3,986.26 claim which is the subject of this suit, was incurred as a result of an *872 acute attack of diverticulitis which occurred in September of 1968. A colostomy was performed during the first surgery and a resection of part of the colon was performed during the second surgery some weeks later. Prudential does not contend that Stoma's application failed to reveal information relevant to its acceptance of the risk related to Stoma's intestinal disease. Prudential denies the claim on the ground that Stoma's July 6, 1968 application denied that he had been examined by any physician within the past five years and denied that he had any physical disease or disorder, when in fact he had been treated by two physicians in 1964 for complaints related to his lungs. Prudential contends that Stoma knew that he had emphysema and intentionally deceived Prudential by failing to furnish this information in answer to questions set forth in the application for the policy.
Prudential's witness from the underwriting department testified that had they known of Stoma's emphysema, they would not have written the policy unless emphysema was excluded and additionally, they would have charged an increased premium. There was no testimony to indicate the amount of additional premium which would have been required.
Dr. H. B. Lovejoy of Sulphur had diagnosed Stoma as having chronic bronchitis and emphysema on July 7, 1961. Dr. Raymond Gregory, then of Galveston, Texas, examined Stoma on February 9, 1962 and diagnosed numerous conditions, one of which was emphysema. The main thing Stoma recalls about the examinations was that he was instructed to give up smoking, an instruction with which he complied sometime during the latter part of 1962. Stoma expressly denied that he had ever been told that he had emphysema. Although these physicians were reluctant to testify that they specifically informed Stoma that he had emphysema, they had the firm belief that Stoma understood their diagnosis. The trial court held as a fact that Stoma was told that he had emphysema and his denial of a disease on his application was a misstatement of fact.
This finding of fact was mitigated by the following facts. Stoma had never been hospitalized for examination or treatment of chronic bronchitis or emphysema. Dr. Robert O. Duncan of Sulphur saw Stoma on June 11, 1964 and again on June 18, 1964 when Stoma was complaining about shortness of breath and coughing up sputum. After clinical and x-ray examinations, Dr. Duncan was not sure that Stoma had emphysema. In September of 1968, when Stoma reported to the Methodist Hospital in Houston, Texas, Dr. Hatch Cummings, Chief of the General Medicine Section, specifically overruled a statement in the admission statement (taken by an interne) that Stoma had emphysema. Stoma had no difficulty with the general anesthetics administered for the major surgeries performed in September and in December of 1968. Defendant's expert in internal medicine, Dr. Irving Singer of Lake Charles, examined Stoma on March 24, 1971. He agreed that clinical and x-ray examination left some doubt that Stoma had emphysema, and stated that special precautions are required when general anesthesia is administered to a patient with emphysema. There was no evidence that special precautions were taken for either of Stoma's 1968 surgeries. Dr. Singer testified that pulmonary function studies were required to demonstrate Stoma's emphysema and that these conclusively showed that Stoma had emphysema which Dr. Singer preferred to term "chronic obstructive lung disease."
Another factor which relates to the issue of Stoma's intention to deceive Prudential is the fact that in February of 1964, Stoma purchased a similar policy with Prudential but with smaller benefits. After paying monthly premiums for more than one year he dropped the policy. There were no claims filed under that policy. Still another factor is that Prudential's Sales Manager (Mr. Benny Reeves) had known Stoma since 1963 when Reeves married *873 Stoma's wife's niece. Reeves testified that he frequently visited in the Stoma home and had no knowledge that Stoma suffered from emphysema. The only conditions he knew about (a missing finger and a "lazy eye") were both mentioned on the application.
The trial judge made a factual determination that Prudential's agent Kyle, who had been with the Company only a short time, was eager to make a quick sale and was only casually concerned with the detailed particulars called for in the application. The trial judge found that Stoma's testimony was impressive and convincing; that it is "highly questionable whether Stoma was aware that there was anything seriously wrong with him" at the time Prudential was selling this policy to him; that Stoma appeared to be healthy, he believed he was in good health, and there have been no manifest symptoms of his illness from the date of his application through the 1972 trial date. The added fact that some of the physicians were not certain of the emphysema diagnosis, caused the trial judge to conclude that Prudential failed to prove that Stoma intended to deceive Prudential. We find no manifest error in this factual determination.
Where the insurer asserts the special defense allowed in LSA-R.S. 22:619(B), the burden of proof is on the insurer to establish that a misrepresentation was made in the application, that the misrepresentation must be material to the risk, and that it must be made with an actual intent to deceive. This triple burden results from the interpretation given in Gay v. United Benefit Life Insurance Company, 233 La. 226, 96 So.2d 497 (1957), and by this court in First Fed. Sav. & L. Ass'n. v. National Old Line Ins. Co., 254 So.2d 497 (La.App. 3 Cir. 1971). See also Hendricks v. Connecticut General Life Ins. Co., 244 So.2d 249 (La.App. 3 Cir. 1971); Fruge v. Woodmen of the World Life Insurance Society, 170 So.2d 539 (La.App. 3 Cir. 1965); Murphey v. Continental Casualty Company, 269 So.2d 507 (La.App. 1 Cir. 1972). The burden of proof described in the Gay case is not an insurmountable one, having been specifically met and proven by insurers in Banburg v. Reserve Life Insurance Co., 259 So.2d 408 (La.App. 2 Cir. 1972), and in Lentz v. Metropolitan Life Insurance Company, 428 F.2d 36 (5th Cir. 1970).
LSA-R.S. 22:619(B) has also been interpreted in a manner less onerous to insurers than the meaning given it in the Gay case. The Court of Appeal for the Fourth Circuit has announced that an intent to deceive is not an essential element in proving the defense allowed insurers in 22:619(B). Radosta v. Prudential Insurance Co. of America, 163 So.2d 177 (La.App. 4 Cir. 1964). See also Lane v. Life Insurance Company of Virginia, 176 So.2d 202 (La.App. 4th Cir. 1965); Lamark v. Lincoln Income Life Insurance Company, 169 So.2d 203 (La.App. 4 Cir. 1964).
It does not appear from a close examination of these cases that the language used, which dispels the necessity of proving both intent to deceive and a material misrepresentation, was necessary in arriving at judgments in favor of the insurers. There was a strong likelihood in those cases that the insureds were chargeable with intent to deceive. The Lamark case in particular contained a statement to the effect that the insured actually possessed an intent to deceive.
The requirement of finding an intent to deceive is still considered essential in proving this defense. The meaning of the Gay case is clear and unambiguous. Knight v. Jefferson Standard Life Insurance Co., 205 So.2d 485 (La.App. 1 Cir. 1967).
The trial court's judgment is affirmed at defendant appellant's costs.
Affirmed.