SCHOTT, Judge.
Defendant has appealed from a $10,000 judgment in favor of plaintiff as the beneficiary of a life insurance policy for that amount on her deceased husband. The policy was originally issued on June 1, 1972, and was reinstated on May 23, 1973. The insured died on December 23, 1973. Defendant resisted the claim on allegations that the decedent made representations in his application and reapplication which were false and known by him to be false, they were material and were relied upon by defendant, and had it not been for such misrepresentations the defendant would not have issued the policy.
In his original application on April 10, 1972, decedent answered the following questions in the negative:
“Have you or any family member to be covered ever had cancer, heart trouble, stroke, diabetes, high blood pressure, mental condition, alchoholism, drug addition, tuberculosis, nephritis? “In the past 5 years, have you or any family member to be covered received medical attention for any disease, injury, physical or mental condition ?”
In his reapplication on May 23, 1973, decedent answered the following question in the negative:
“Has anyone covered, or to be covered, under this policy ever had any illness or injury, treatment by physician, deformity, contagious disease, impairment of health, received any disability benefits in the last S years, or is anyone now pregnant?”
The evidence showed that on December 8, 1970, plaintiff had consulted a dermatologist in connection with a mole on his left scapula. The doctor thought the mole was malignant and removed it. It was later confirmed to be a malignant melanoma. Three days later the dermatologist did a wider excision which required local anesthesia and involved 24 sutures for closure. The sutures were removed on two followup visits. A chest X-ray was taken and was negative as to whether matastasis had occurred in the soft tissue or bone in the immediate area of the chest. On January 21, 1971, the physician mailed decedent a completed hospitalization claim form which contained the following entry:
“1) Maligant melanoma — left scapular area 12 cm. sutures — Wide excision under local anesthesia and biopsy.”
The dermatologist gave the following testimony relative to conversations he had with decedent and his wife in December 1970, and January 1971: He told decedent that he had a malignancy and felt that decedent knew “malignancy” meant cancer. He told plaintiff that he thought all of the tumor was removed, but because this disease had a bad prognosis in general any change of color in decedent’s skin should be investigated without delay.
Decedent’s family physician, Dr. William J. Johnson, testified: He saw decedent six times in the five years previous to April *734 10, 1972. He prescribed anti-hypertensive drugs from time to time and probably told him the reason for the prescription was that his blood pressure was somewhat elevated. As early as February, 1964, Dr. Johnson had been prescribing a mild hypertensive drug. On one visit on March 29, 1972, just twelve days before the original application was made, decedent was complaining about low back pain. On March 2, 1973, decedent was found to have slightly elevated blood pressure on a visit to his doctor.
Two days before his death, decedent was admitted to the hospital by Dr. Johnson, who stated in the admit note, “the chief complaint is aching, funny, then passed out. Patient had been under observation and treatment for skeleto-metastasis, dorsal spine, presumably from a malignant melanoma excised from left scapula region two years ago.” The death certificate showed the immediate cause of death to be “metastatic disease cerebrum due to, or as a consequence of: malignant melanoma, with generalized metastases.” Dr. Johnson testified that on the occasions when he saw decedent there was never any discussion or concern expressed about the removal of the melanoma and the possibility of decedent’s having cancer, until an admittance to the hospital in July or August of 1973 when he told plaintiff that her husband had cancer.
Representatives of the insurance company testified that the policy would not have been issued if they had known about decedent’s medical history.
The trial judge gave the following reasons for his judgment in favor of plaintiff :
“The crux of the legal issue is whether the representations made by the insured decedent were false, that said misrepresentations were material to the risk and whether they were made with the intent to deceive, (emphasis added) See Stoma v. Prudential Insurance Company of Am., (La.App.1973) 281 So.2d 871; LSA R.S. 22:619 A & B.
“The burden, of course, is upon the insurer alleging said defense to prove all elements thereof. Admittedly, the proof is difficult and must be circumstantial at best in view of the inability of the insured to appear. Fraud or deceit are never presumed and require substantial proof. In the instant case, the Court is satisfied that the defendant has proven the first two requirements for a defense and equally satisfied that defendant has failed to carry its burden in establishing the third — i.e. the intent to deceive. This conclusion is reached after a full consideration of the testimony as it relates to the character and work history of the decedent. The Court further finds that the testimony was inconclusive to establish the decedent’s absolute and unquestionable knowledge of his medical problems.”
The trial judge placed specific reliance upon the Stoma case from the Third Circuit. While we would not be bound by this decision, we are bound by Gay v. United Benefit Life Insurance Company, 233 La. 226, 96 So.2d 497 (1957) which was cited and followed in Stoma. In the Gay case the Supreme Court last had occasion to interpret the provisions of LSA-R.S. 22:619(B) which provides as follows:
“In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The" falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.” (Emphasis supplied)
The Supreme Court’s interpretation of the emphasized portion of the statute was:
“ . . . that in order to vitiate a policy a misstatement must have been made *735 fraudulently or with the intent to deceive, — that is (or), knowing it to be untrue and believing it to be material to the risk (or of such nature that it would be only reasonable to assume that he must have believed that it was material)
With this interpretation, the Supreme Court has substituted the word “and” for the word “or” in the statute. While we do not agree with this interpretation we are nevertheless bound by it in deciding the instant case.
However, we have concluded that the facts and circumstances of this record are sufficient to prove that decedent did have actual intent to deceive when he falsely answered the question about his health.
We are not operating in the realm of credibility calls and findings of physical facts by a trial judge. Our problem is to find a dead man’s intent which can only be determined from surrounding circumstances at the time he made the misrepresentations. Because the trial judge was in no better position to draw inferences of decedent’s intent from the facts than we are, this case is not one which lends itself to the typical application of the manifest error rule.
The issue of the decedent’s intent to deceive in his application and reapplication for insurance must be resolved based upon (1) the finding that there was misrepresentation of fact and (2) the materiality and significance of the misrepresentation as it relates to the acceptance of the risk or the hazard assumed by the insurer.
It is incomprehensible that anyone could have received the regimen of medical treatment administered to the decedent and blandly deny having “received medical attention for any . . . physical . . . condition” without intending to deceive. It is illogical to conclude that decedent had no intention to deceive when he denied having ever had cancer or high blood pressure despite the extensive surgery for the malignant melanoma, the consistent treatment for high blood pressure, the conversations the two physicians had with him and his wife concerning his condition, and the dermatologist’s testimony that decedent knew malignancy meant cancer.
It is significant that plaintiff admitted that she filled out the original application and her hsuband read it. Surely she was acting as decedent’s agent at the time and she had the benefit of the dermatologist’s warning that skin cancer had a bad prognosis so that she should be vigilant regarding the possibility of a recurrence. As the beneficiary she would benefit by the issuance of the policy in the event of her husband’s death.
Finally, there is the fact, not heretofore mentioned, that decedent on his original application gave his weight as 220 pounds when only twelve days previously he weighed 253 pounds in Dr. Johnson’s office. It would be unusual for any person to understate his weight to such an extent inadvertently, but this is particularly significant when considered in the light of Dr. Johnson’s testimony that as early as 1964 he was prescribing for decedent a drug called tenuate, which the doctor described as an appetite suppressant.
Having concluded that defendant’s evidence was sufficient to establish its defense under R.S. 22:619(B) and even under the jurisprudence emanating from Gay v. United Benefit Life Insurance Company, supra, we reverse the judgment of the trial court.
Accordingly, there is judgment in favor of defendant, Life General Security Insurance Company and against plaintiff, Mary Louise Edwards Jordan, dismissing her suit at her cost.
REVERSED AND RENDERED.
*736 BEER, J., concurs with written reasons.