353 So.2d 480 (1977)
Olive WILLIS, Plaintiff-Appellee,
v.
COLONIAL LIFE & ACCIDENT INSURANCE CO., Defendant-Appellant.
No. 6246.
Court of Appeal of Louisiana, Third Circuit.
December 20, 1977.
Raggio, Farrar, Cappel & Chozen, Frederick L. Cappel, Lake Charles, for defendant-appellant.
Perrell Fuselier, Oakdale, for plaintiff-appellee.
Before WATSON, GUIDRY and FORET, JJ.
*481 FORET, Judge.
This case arises from a suit by Olive Willis, mother of Layton D. Willis, deceased, against Colonial Life & Accident Insurance Company, in connection with a whole life insurance policy in the sum of $10,000.00, naming Olive Willis as beneficiary. From judgment in favor of plaintiff, Colonial Life & Accident Insurance appeals, asserting the following as errors of the trial court:
(1) The trial court erred in holding that Colonial had issued an insurance policy on the life of Layton D. Willis;
(2) The trial court erred in not finding that plaintiff had made material misrepresentations in the application for insurance.
On February 19, 1975, in the Oakdale business establishment of plaintiff, Olive Willis was contacted by G. C. Perry, an independent agent of defendant, Colonial Life and Accident Insurance Company (hereinafter referred to as "Colonial"). At that time, she applied for the issuance of two (2) life insurance policies, one on the life of Layton D. Willis, her son, aged sixteen (16), and the other on the life of James Willis, her husband. Under both applications, Olive Willis was named as beneficiary. For neither application was a medical examination requested by Perry. After completion of the application, plaintiff, Olive Willis, paid the initial premiums thereon and was given conditional receipts therefor, the pertinent language of which was as follows:
"(1) If a full first premium has been paid at the time of completion of the application according to the mode of premium payment and plan selected, the insurance applied for will take effect as of the last occurring of the following dates: (a) as of the date of the receipt, (b) the date of completion of any required medical examination, or (c) the date specifically requested in the application, provided that on such date the proposed insured(s) is acceptable to the Company as a standard risk(s) for the policy applied for as to the amount, plan, and rate of premium declared paid. Otherwise, there shall be no liability on the part of the Company, as a result of this receipt, except to refund payment upon surrender of this receipt."
The application involving Layton Willis was received at defendant's office on February 24, 1975. According to Jonathan N. Dresser, defendant's chief life underwriter, the application was incomplete in that the signature of Layton D. Willis was missing; it was returned to plaintiff so that it could be completed, and it was received by defendant in completed form on March 31, 1975. G. C. Perry had no knowledge of the incompleteness of the application and of its return to plaintiff. Defendant's policy insuring James Willis was issued on April 21, 1975, to G. C. Perry for delivery to plaintiff.
On March 3, 1975, Layton D. Willis, while sitting in his parked and running automobile in the parking lot of Oakdale General Hospital, died of carbon monoxide poisoning. In June, 1975, defendant's claims department advised plaintiff that no life insurance policy insuring her son had been issued as a result of the February 19, 1975, application therefor, and consequently denied plaintiff's claim for benefits. As of yet, the premium thereon has not been returned to plaintiff.
Colonial bases its allegations of error upon two arguments: (1) That according to the conditional receipt attached to the application, a policy of insurance was not to be issued until such time as Layton D. Willis was acceptable to Colonial as a standard risk for the policy applied for as to the amount, plan, and rate of premium paid (It cites the case of Gonsoulin v. Equitable Life Assurance Society, 152 La. 865, 94 So. 424 (1922) as authority for that proposition.); and (2) that, in the alternative, had a policy of insurance been issued, Colonial would not be liable thereon because plaintiff made material misrepresentations in the application therefor.

I

ISSUANCE OF INSURANCE POLICY
The rule of law in the case of Gonsoulin v. Equitable Life Assurance Society, *482 supra, is inapplicable to the case at bar. In Gonsoulin the Louisiana Supreme Court was confronted with a somewhat similar conditional receipt. In that case, the receipt provided:
"Received of Mr. John D. Walet, No. A-628916, three hundred and fifty-three and 90/100 dollars, the first annual premium on proposed insurance of $______ on the life of John D. Walet, for which the above application is this day made to the Equitable Life Assurance Society of the United States. Insurance subject to the terms and conditions of the policy contract shall take effect as of date of this receipt, provided the applicant is on this date, in the opinion of the society's authorized officers in New York, an insurable risk under its rules, and the application is otherwise acceptable on the plan and for the amount and at the rate of premium applied for; otherwise the payment evidenced by this receipt shall be returned on demand and the surrender of this receipt." Gonsoulin v. Equitable Life Assurance Soc., supra, at page 425.
However, the facts of payment of the initial premium and issuance of such a receipt are the main similarities as between the facts of the Gonsoulin case and the case at bar. In Gonsoulin, a medical examination by defendant-insurer's regularly employed physician was required before the issuance of the life insurance policy. Although a medical examination (by another physician) had been conducted on the date of the application, the examination was not complete, and a request for elaboration of the answers to a few medical questions was made. At the time that the report of that examination was received by defendant, defendant rated the proposed insured as an abnormal, and not standard, risk. Upon receipt of more medical information as to the proposed insured, the insurer rated the proposed insured at a grade well below a standard risk. The insurer would not issue any policy until such time as it received a medical report from its regularly employed physician.
The proposed insured died prior to the time in which the Society's authorized officers in New York had examined his medical records to determine whether or not he was an insurable risk. The Supreme Court held that the insurance policy was not in effect as of the date of the death of the proposed insured, and it expressed those sentiments in the following language, at page 427:
By the terms of the receipt, which contains the only contract between the parties in the matter, it is evident that the insurance applied for was intended to take effect as of date June 26, 1917, but only upon condition that on that date, in the opinion of defendant's authorized officers in New York, Walet was an insurable risk, not simply on any terms or conditions, or at any premium, but, under its rules, on the plan and for the amount and at the rate of premium applied for, if found otherwise acceptable. It is equally clear that, for substantial reasons, up to the time that Walet died, the risk had not been found acceptable, under the rules of defendant, by its authorized officers, on the plan, for the amount, and at the premium applied for, but, to the contrary, it was found that, if Walet should be found insurable at all, it would be at a considerably increased premium. It follows, therefore, that the insurance on that plan and at the rate proposed did not become effective; and, as that was the only plan that defendant could accept or reject, being the only one submitted to it, it follows that insurance in no amount became effective.
In this case, it was a company policy of Colonial to forego medical examination for an insurance application of any person of sixteen years of age or less, according to the testimony of Dresser and Perry. This procedure had been followed by Colonial for previous applications on Layton Willis in 1972 and 1974. On February 14, 1972, one such application was completed. A policy of life insurance was issued, but had lapsed for non-payment of premiums. On August 29, 1974, another application had been filed, but no policy was issued because the initial premium check was dishonored. For neither *483 of those applications had a medical examination been required or conducted.
Colonial now argues that the policy became effective on the date of receipt of application only if at that time Layton Willis was acceptable to Colonial as a standard risk. It alleges that Layton Willis was not a standard risk.
The conditional receipt issued to plaintiff in this case provided that the insurance applied for would take effect as of the last occurring of the following dates: (a) the date of the receipt; (b) the date of completion of any required medical examination or (c) the date specifically requested in the application, provided that on such date the proposed insured was acceptable to the company as a standard risk for the policy applied for as to the amount, plan and rate of premium declared paid. As noted above, no medical examination was required, and no date for effectuation of the policy was specifically requested in the application. Therefore, the only issue in this connection is whether the proposed insured was in fact acceptable to the company as a "standard risk" as of the date of the receipt.
Colonial alleges that Layton Willis was not a standard risk as of the date of the receipt. We do not agree with that contention. The determination by Colonial that Layton Willis was not an acceptable risk was made after his death, and is based upon medical evidence discovered by Colonial subsequent to his death. There is no evidence introduced in this case, as was done in Gonsoulin, to show upon what standards or criteria Colonial would make a determination that Layton Willis was not an insurable risk as to the amount, plan applied for, and rate of premium declared paid. Colonial had previously issued a policy of insurance on Layton Willis with no more information and/or evidence than was presented in the policy applied for in the instant matter; and because of Colonial's procedure of not requiring medical examination of persons sixteen years of age or less, Colonial would not have required medical information and/or examination for the policy applied for which is the subject of this controversy.
The trial judge obviously concluded from the testimony of Dresser and Perry that a policy of insurance was either actually issued and never delivered to plaintiff, or would have been issued with the effective date thereof being the date of the conditional receipt. An additional consideration for the trial court's ruling no doubt rests in part on the fact that the policy of insurance actually issued to James Willis (which had been applied for at the same time as the one on Layton Willis) was not issued until April 21, 1975, more than sixty days after the date of the conditional receipt. Obviously Colonial was slow in issuing its policies. The trial judge could reasonably conclude that the policy of insurance on Layton Willis actually was issued or would have issued on April 21, 1975, with the effective date thereof being the date of the receipt, February 19, 1975. For all of these reasons, we find no fault in the ruling of the trial court.
We now pass to the issue of the failure of the application to mention the fact that Layton Willis had been hospitalized on two occasions during the year 1974.

II

ISSUE OF MISREPRESENTATIONS
On May 9, 1974, Layton Willis was admitted to Oakdale General Hospital as a result of a "blackout spell". He was treated by his family physician, Dr. Lowry, of Oakdale, and no definitive diagnosis was rendered. Dr. Lowry hospitalized Layton Willis again at Oakdale General Hospital for the period of May 15 through May 17, 1974, after receiving a history that the patient had passed out several times. Dr. Lowry's diagnosis was "diabetes mellitus".
Dr. Lowry referred Layton Willis to a specialist, Dr. William Foster, a neurosurgeon in Lake Charles. The patient was hospitalized in Lake Charles Memorial Hospital for the periods June 16 through June 18, 1974, and July 21 through July 25, 1974. He was treated for a condition diagnosed by Dr. Foster as "fibrous dysplasia of the skull *484 with secondary associated seizure disorder". Dr. Foster prescribed anti-convulsant medication and made arrangements for a re-examination of Willis in six months.
In order for an insurer to avoid liability upon a policy which it has issued, it must establish that (1) a misrepresentation was made in the application; (2) the misrepresentation was material to the risk, and (3) the misrepresentation was made with an actual intent to deceive. Gay v. United Benefit Life Ins. Co., 233 La. 226, 96 So.2d 497 (1957); Stoma v. Prudential Ins. of America, 281 So.2d 871 (La.App. 3 Cir. 1973); First Fed. Sav. & Loan Ass'n v. National Old Line Ins. Co., 254 So.2d 497 (La.App. 3 Cir. 1971); Hendricks v. Connecticut Gen. Life Ins. Co., 244 So.2d 249 (La.App. 3 Cir. 1971).
In this case Colonial has not borne its burden of proof. Colonial alleges that plaintiff, Olive Willis, did not honestly and truthfully answer the medical questions contained in the 1975 application, which made no mention of Layton's prior illness and treatment. Such allegation is denied by plaintiff. She asserts that she truthfully answered all questions propounded to her by G. C. Perry, defendant's agent who was filling out the application. The trial court accepted plaintiff's recitation of facts rather than that of Perry. It had a reasonable evidentiary basis to rule as it did, and its judgment is affirmed. Canter v. Koehring Co., La., 283 So.2d 716 (1973); cases too numerous to cite.
Costs of this appeal are assessed against defendant-appellant.
AFFIRMED.