396 So.2d 394 (1981)
Elnora TOPPS
v.
UNIVERSAL LIFE INSURANCE COMPANY.
No. 14004.
Court of Appeal of Louisiana, First Circuit.
March 2, 1981.
Robert W. Stratton, Baker, counsel for plaintiff-appellant, Elnora Topps.
Robert C. Williams, Baton Rouge, for appellee Universal Life Ins. Co.
Before COVINGTON, CHIASSON and LEAR, JJ.
*395 COVINGTON, Judge.
In this matter Elnora Topps, the widow of Louis Topps and the named beneficiary under the insurance policy in question, sued the insurer, Universal Life Insurance Company, to recover the proceeds of a policy of life insurance on the life of her husband issued by the insurer. From a judgment in favor of the defendant, plaintiff appeals. We affirm.
The insured, Louis Topps, applied for life insurance with Universal on May 9, 1977, at the age of 36 years. He died on February 8, 1979. The application for insurance was taken by an agent of the insurance company, Rosalie Bailey. The application, which was made a part of the policy, contains a number of questions, all of which were asked of the insured by the agent. One of the questions specifically asks if the insured has ever had or been treated for high blood pressure. The answer was given as "no." The application also specifically asks if the applicant had ever had or been treated for a number of stated ailments, e. g., "kidney or bladder disease." He answered "no" to each of them. In addition, the application contains a "catch all" question: "Have you consulted a physician within the last five years for any condition not stated above?" Again, the answer was "no." Subsequently, the insured's medical records revealed that he had been suffering from high blood pressure for a number of years and was, at the time of the application, under a doctor's care. The records further revealed that Mr. Topps had received extensive treatment for the disease and he was classified as "severe hypertensive." The records indicate that Mr. Topps was well aware that he was suffering from high blood pressure, having made regular and frequent visits to doctors for the condition, having been hospitalized for the condition, and having been placed on a "no salt" and restricted diet. His treating physician testified that Mr. Topps was aware of his condition.
Universal Life Insurance Company relies upon LSA-R.S. 22:619(B) for its defense to the plaintiff's claim for the proceeds in question.
LSA-R.S. 22:619(B) provides:
"B. In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer."
In the recent case of Watson v. Life Insurance Company of Louisiana, 335 So.2d 518 (La.App. 1 Cir. 1976), this Court set forth the criteria necessary for successful assertion by an insurer of a defense under LSA-R.S. 22:619(B):
"In order for the insurer to successfully urge LSA-R.S. 22:619(B) as a defense to recovery of the proceeds by the plaintiff-appellant, it must be proved that material misrepresentations were made fraudulently or with intent to deceive the insurer and that the misrepresentations materially affected the risk assumed by the insurer. Gay v. United Benefit Life Insurance Company, 233 La. 226, 96 So.2d 497 (1957); Reed v. American Casualty Company of Reading Pennsylvania, 317 So.2d 648 (La.App. 1st Cir. 1975), writ refused, 320 So.2d 914 (1975); Parfait v. Minnesota Mutual Life Insurance Company, 311 So.2d 558 (La.App. 4th Cir. 1975), writ refused 313 So.2d 847 (1975); Knight v. Jefferson Standard Life Insurance Company, 205 So.2d 485 (La.App. 1st Cir. 1967). Thus, the burden of proof is on the insurer to prove, in addition to the falsity of the statement made, the following two elements: (1) materiality and (2) intent to deceive. Stoma v. Prudential Insurance Company of America, 281 So.2d 871 (La.App. 3rd Cir. 1973)."
The record establishes clearly that the insured's statements concerning "high blood pressure" and not having consulted a doctor in the past five years were false. The trial judge observed in his oral reasons for judgment that Mr. Topps knew he had high *396 blood pressure (hypertension); that the insured told his treating physician that he was being treated for this condition at the hospital and showed the doctor the medicine he was taking. The trial judge also noted that the statement that the insured had not seen a doctor in the last five years was false: "In fact, he had just seen Dr. Lucas on May 3, 1977, having seen him on three occasions prior to May; those being the twenty-sixth of April, twenty-first of April and the nineteenth of April, 1979.[[1]]
The trial judge found that the misrepresentations made by Mr. Topps were material in affecting the insurer's decision to enter into the insurance contract; they materially affected the acceptance of the risk or hazard assumed by the insurer.
The decedent's misrepresentations kept the application from being screened by the company, as reflected by the testimony of William Frederick, manager of the insurer's Baton Rouge office:
"Q. ... you indicated that you screen the application to see if there are any questions on the application indicating that the person has any medical condition?
A. Medical condition and to see if all questions were answered, because every oneevery question must be answered.
Q. Assuming that you get an answer that a person has had a medical condition, what then happens?
A. The first thing, the application will go to the home office where there is an underwriting department and a doctor who also screens applications.. . . . .
Q. The condition hypertension, high blood pressure ... on the application; if an individual answers yes, I've had high blood pressure, would your company issue him a policy?
A. No, not unlessnot without further investigation.
Q. And what would be the nature of that further investigation?
A. We would send out an independent investigator, plus a form to be sent to the doctor to find out exactly how high the pressure was and was it controllable or just what.
Q. If the individual indicated that he had been hospitalized or under a doctor's care for any other condition other than those listed on the document, would the same steps hold true?
A. The same steps would hold true...."
Mr. Frederick testified that if a "yes" had been checked on the high blood pressure column, it would have been necessary for the underwriting department to check to determine whether they would still issue the policy.
In considering the testimony of Mr. Frederick, the trial judge remarked:
"The underwriting department was not given an opportunity to check on this because of the negative answer. The court feels and finds that the negative answer did constitute an item that would materially affect the acceptance of the risk by the insurer."
In the case of Parfait v. Minnesota Mutual Life Insurance Company, 311 So.2d 558, 560 (La.App. 4 Cir. 1975), writ refused, 313 So.2d 847 (La.1975), the Court said:
"Intent to deceive may involve either knowledge of falsity of the statement and its materiality to the risk or circumstances in which an insured must have known the statement to be material to the risk. Strict proof of fraud is not required. Murphy v. Continental Casualty Company, 269 So.2d 507 (La.App. 1 Cir. 1972)."
In determining whether the statements of the insured in his application were made with the intent to deceive, we are guided by the opinion in Watson v. Life Insurance Company of Louisiana, supra at 521:

*397 "Strict proof of fraud is not required to show the applicant's intent to deceive, because of the inherent difficulties of proving one's intent. The intent to deceive must be determined from the attending circumstances which indicate the insured's knowledge of the falsity of the representations made in the application and his recognition of the materiality thereof, or from circumstances which create a reasonable assumption that the insured recognized the materiality of the misrepresentations. Reed v. American Casualty Company of Reading, Pennsylvania, supra; Parfait v. Minnesota Mutual Life Insurance Company, supra; Murphy v. Continental Casualty Company, 269 So.2d 507 (La.App. 1st Cir. 1972)."
As evidenced by the medical records, the testimony of Dr. J. S. Lucas and of the decedent's wife, the decedent was well-aware of his high blood pressure condition. The trial judge stated:
"Obviously, from the testimony, Mr. Topps knew that he had been to the hospital in 1975, suffering from severe high blood pressure; severe to the extent that he was there in January of '75, February of '75, March of '75; he went one time in February of '75; informed that he had missed thirty days of work because of high blood pressure. Mr. Topps knew that he was suffering from high blood pressure on the nineteenth of April, 1977; he visited Dr. Lucas and told Dr. Lucas he had been treated for high blood pressure or hypertension at Earl K. Long Hospital. And was told his blood pressure was 260 over 202.
"The court finds that Mr. Topps, in answering negatively to the question that he had never had high blood pressure, intended to deceive Universal Life Insurance Company so that they would issue the policy of insurance."
The application for life insurance shows that all questions concerning previous treatment for diseases, including hypertension, were answered in the negative. On the trial it was clearly established that the decedent was under constant treatment for high blood pressure, and that both he and his wife were aware of his condition when the application was made. It is clear that the statements were false, were material to the risk assumed by Universal, and were made with intent to deceive the insurer. See Johnson v. Occidental Life Insurance Company of California, 368 So.2d 1032 (La. 1979).
For the reasons assigned, the judgment of the District Court is affirmed at the appellant's costs.
AFFIRMED.
NOTES
[1] This is obviously an error; it should read 1977, in conformity with the testimony of Dr. Lucas.